732 F.2d 325
 116 L.R.R.M. (BNA) 2980, 101 Lab.Cas. P 11,004,
5 Employee Benefits Ca 1676
 William STRUBLE, et al., Appellants and Cross-Appellees,
v.
NEW JERSEY BREWERY EMPLOYEES' WELFARE TRUST FUND,
Anheuser-Busch, Inc., Pabst Brewing Co., Universal
Grain Co. of New Jersey, and Farmers
Feed Company, Appellees and
Cross-Appellants,
and
Liebmann Breweries, Inc., John Ostach, Paul Charrier, John
Fitzgerald, Alfredo Castro, Henry Hamilton, Jerome
Tiermann, William Griffin, and Frank
Kellett, Appellees.
 Nos. 83-5115, and 83-5220 to 83-5224.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 12, 1983.
Decided April 16, 1984.
 
 George Duggan (argued), Reitman, Parsonnet, Maisel & Duggan, Newark, N.J., for appellants.
 Edward F. Ryan, Rosemary A. Hall (argued), Kevin P. Duffy, Carpenter, Bennett & Morrissey, Newark, N.J., for appellee and cross-appellant Anheuser-Busch, Inc.
 Raymond M. Tierney, Jr., Mary E. Tracey (argued), Shanley & Fisher, P.C., Newark, N.J., for appellees Ostach, et al.
 Frederick T. Shea, John F. Gibbons, Brian S. Conneely, Kelley, Drye & Warren, New York City, Donald Maizys, Farrell, Curtis, Carlin & Davidson, Morristown, N.J., for appellee and cross-appellant New Jersey Brewery Employees' Welfare Trust Fund.
 Justin P. Walder, Thomas J. Spies, Walder, Sondak, Berkeley & Brogan, P.A., Roseland, N.J., for appellee and cross-appellant Farmers Feed Co.
 John C. Lifland, Stryker, Tams & Dill, Newark, N.J., for appellee and cross-appellant Pabst Brewing Co.
 Raymond J. Fleming, Feuerstein, Sachs, Maitlin, Rosenstein & Fleming, West Orange, N.J., for appellee and cross appellant Universal Grain Co. of New Jersey.
 Before SEITZ, Chief Judge and GARTH and BECKER, Circuit Judges
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 Plaintiffs appeal the portion of the district court's order granting summary judgment in favor of the defendants on two of the four counts in the plaintiffs' amended complaint. The district court certified that portion of the order as final under Rule 54(b), and we therefore have jurisdiction under 28 U.S.C. Sec. 1291. Defendants cross-appeal the remaining portion of the district court's order denying their summary judgment motions on the remaining two counts and certifying four "controlling questions of law" under 28 U.S.C. Sec. 1292(b). We permitted an appeal from that portion of the order.
 
 I. BACKGROUND
 A. Facts
 
 2
 The plaintiffs in this action are seven former employees of P. Ballantine & Sons, Inc., a brewery that went bankrupt in 1972. For the purposes of Count I of their amended complaint, the plaintiffs are also the representatives of a class of retired persons who were formerly covered by the New Jersey Brewery Employees' Welfare Trust Fund Agreement (hereafter "the Agreement") and who received hospitalization, medical, and life insurance benefits thereunder.
 
 
 3
 The defendants fall into three categories. In the first category are four firms (hereafter referred to as "the Employers") that were obligated under the Agreement to fund certain welfare benefits for their employees. These Employers are Anheuser-Busch, Inc., Pabst Brewing Co., Universal Grain Co. of New Jersey, and Farmers Feed Co.[1] In the second category is the New Jersey Brewery Employees' Welfare Trust Fund (hereafter referred to as "the Trust Fund"). The third category comprises eight of the trustees of the Trust Fund. These trustees were designated by the Employers, and we will therefore refer to them collectively as the Employer Trustees.
 
 
 4
 In 1955 the Employers and the Brewery Workers Joint Local Executive Board of New Jersey and certain of its local unions (hereafter "the Union") agreed to create the Trust Fund to finance the purchase of health, life, and disability insurance policies as a fringe benefit for the Employers' workers. Originally the Agreement provided only for coverage of active employees, but the parties amended it in 1956 to include retirees.
 
 
 5
 The Agreement itself did not create any specific obligation to finance insurance benefits. Instead, it provided that each Employer would contribute the amount set forth in its then-current collective bargaining agreement with the Union, so that the amount of each Employer's contributions could change with successive bargaining agreements. The Agreement provided that if a new bargaining agreement required no contributions, the Employer would cease to be a participant in the Trust Fund and the Employer's workers would no longer be entitled to benefits.
 
 
 6
 The Agreement provided that the Employers and Union would appoint their own Trustees, and that these Trustees would be required to vote in Employer and Union blocks on matters concerning the Trust Fund. The Trustees had various powers, including the power to interpret the terms of the Agreement; to formulate a "Welfare Plan" establishing the level of employee and retiree benefits; to release, compromise, or settle claims for or against the Trust Fund; and to initiate collection actions against delinquent Employers. The Agreement provided that the Trust Fund would terminate at the end of twenty-one years or upon the withdrawal of all Employers. In either event, the Trustees at the time of termination were to apply the assets of the Trust Fund to pay all of the Fund's obligations and distribute any remaining amounts "in such manner as will, in [the Trustees'] opinion, best effectuate the purposes of the said Trust ...."
 
 
 7
 The collective bargaining agreements covering the period from 1973 through 1976 were the last to require Employer contributions to the Trust Fund. With the exception of Anheuser-Busch's contract, these bargaining agreements stated that the Employers would contribute $93.77 per month to the Trust Fund for each employee. This amount was calculated on the basis of the Trust Fund's obligation to active employees and retirees. The Anheuser-Busch bargaining agreement did not specify a particular level of contributions, but Anheuser-Busch does not contest the district court's conclusion that it was also obligated to contribute $93.77.
 
 
 8
 Soon after the signing of these last bargaining agreements, it became apparent that the $93.77 would buy more employee and retiree benefits than were promised in the then-current Welfare Plan. A dispute ensued over the Employers' obligations to the Trust Fund. The Union Trustees argued that the Employers were required to pay the amount specified in the bargaining agreements for each employee, and that the surplus should be used to increase the level of benefits in the Welfare Plan. The Employer Trustees maintained that the Employers were simply required to fund a certain level of benefits and were therefore entitled to a reduction in the level of required monthly contributions and a refund of the excess previously paid (which the Employer Trustees suggested should be applied against outstanding and future Employer obligations to the Trust Fund).
 
 
 9
 This dispute became serious in 1975, when Blue Cross/Blue Shield returned to the Trust Fund over $475,000 in excess premiums paid during the 1973-74 fiscal year. The Trustees, voting in Employer and Union blocks, deadlocked on the proper use of this refund. By common consent, the Trustees submitted the dispute to an Umpire, who decided in favor of the Employers. Following that decision, counsel for the Trust Fund requested an opinion from the Department of Labor on whether the application of the refund against outstanding and future Employer obligations would violate ERISA. The Department responded that the issue was too complex for issuance of an opinion letter at that time. The Trustees therefore agreed to reduce the Employers' obligations and credit them with the surplus. Later the Trust Fund received a second refund amounting to more than $35,000, and it was handled in a similar fashion.
 
 
 10
 In 1976 the Employers negotiated new bargaining agreements that did not require contributions to the Trust Fund. The Trustees therefore terminated the Fund and notified the retirees that all benefits under the Fund would cease as of July 1, 1976. The plaintiffs filed this action on May 11, 1977.
 
 B. Procedural History
 
 11
 The plaintiffs' original complaint named only the Employers and the Trust Fund as defendants and asserted only one cause of action, described below as Count I of the amended complaint. In 1979 the district court certified the plaintiffs as class representatives for the purposes of this claim.
 
 
 12
 The plaintiffs amended their complaint in 1980 to include the Employer Trustees as defendants and to assert three additional causes of action against various of the defendants. The amended complaint stated generally that the district court had jurisdiction by virtue of sections 301 and 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Secs. 185, 186 (1976 & Supp. II 1978), and sections 401 through 406, 409, and 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Secs. 1101-06, 1109, 1132 (1976 & Supp. IV 1980).
 
 
 13
 At the direction of the district court, the parties filed motions for summary judgment on all counts. On the basis of affidavits and other supporting materials but without an evidentiary hearing, the district court granted summary judgment for the defendants on Counts I and IV and denied all motions for summary judgment on Counts II and III. The district court certified the rulings on Counts I and IV as final under Rule 54(b), and the plaintiffs filed a timely notice of appeal from that portion of the district court's order. The district court also certified four questions of law under 28 U.S.C. Sec. 1292(b) regarding Counts II and III, and the defendants cross-appealed from that portion of the order with our permission.
 
 II. DISCUSSION
 A. Count I
 
 14
 The plaintiffs allege in Count I that the Employers were contractually obligated under the Agreement to provide lifetime retirement benefits to the named class of retirees. The plaintiffs rest on the theory that, by retiring, they acquired vested rights to the retirement benefits promised in the collective bargaining agreements in effect on those dates. The Employers allegedly violated these rights by failing to continue the retirement benefits after the termination of the Trust Fund in 1976. The plaintiffs do not allege any breach of duty by the Trustees in this count.[2]
 
 
 15
 The plaintiffs look to the language of the Agreement for support in Count I. They direct us to the section of the Agreement that defined "retirees" as those employees who had retired as of a certain date "and for whose benefit contributions to the Trust Fund are made pursuant to the then current Collective Bargaining Agreement." The "then current" collective bargaining agreement, according to the plaintiffs, was the bargaining agreement at the time of retirement, and the passage therefore implied that the rights set forth in the bargaining agreement vested at the time of retirement. The plaintiffs also point to the fact that the Employers contributed toward retirement benefits for retirees of the two bankrupt Employers until 1976, the year the Trust Fund was terminated.
 
 
 16
 Defendants respond that the "then current" collective bargaining agreement is the bargaining agreement in effect at the time of the alleged obligation to pay, not the time of retirement, so that if the present bargaining agreement promises no retirement benefits, the retirees have no right to such benefits. Because no bargaining agreement promising such benefits has existed since 1976, the Employers argue that they have no obligations to the retirees. The Employers dismiss as irrelevant the fact that certain retirees continued to receive benefits after their Employers went bankrupt.
 
 
 17
 Our review of the district court's grant of summary judgment is plenary. In re Japanese Electronic Products Antitrust Litigation, 723 F.2d 238, 257 (3d Cir.1983).
 
 
 18
 We believe that the undisputed facts in Count I show the plaintiffs' claim to be meritless. The Agreement stated that all obligations to provide benefits were based solely on the provisions of the "then current" bargaining agreement, and we believe that this language was intended to refer to the bargaining agreement in effect at the time the Employer's payment was allegedly due. The Agreement expressly provided that the parties could amend the bargaining agreements from time to time.[3] The Agreement contained no language suggesting that an obligation to provide benefits could continue beyond the life of the Agreement, and the plaintiffs have offered no evidence that the bargaining agreements themselves created such an obligation.
 
 
 19
 The plaintiffs concede in their brief that certain brochures explaining the Trust Fund to the workers were not part of the Agreement and that the language in those brochures was not binding. It is nevertheless relevant to note that these brochures support the Employers' construction of the Agreement. One pamphlet, for example, stated that "[benefits for] you and your dependents will terminate if ... your Employer ceases to contribute towards the insurance ...."
 
 
 20
 The plaintiffs assert that, even if the Agreement did not obligate the Employers to pay for lifetime retirement benefits, the language of the brochures and contract induced the retirees to believe such a promise had been made. The retirees argue that they relied on this promise and that the Employers are therefore estopped from denying the obligation. The evidence set forth above, however, clearly refutes the idea that the plaintiffs could reasonably have believed that a promise of lifetime benefits had been made.
 
 
 21
 In view of the foregoing, we will affirm the district court's grant of summary judgment in favor of the defendants on Count I.
 
 B. Count IV
 
 22
 The district court granted the Employer Trustees' motion for summary judgment on Count IV. As with Count I, our review here is plenary.
 
 
 23
 Although the plaintiffs' amended complaint is less than crystalline, we read it to charge the Employer Trustees with breaches of their duties of care and loyalty in failing to collect the amount of Employer contributions allegedly required by the Employers' respective bargaining agreements, and in failing to apply the Blue Cross surpluses to the benefit of the retirees. Specifically, the plaintiffs allege that the Employer Trustees breached their duties by voting to return the surplus to the Employers and by submitting the surplus issue to an umpire who had no jurisdiction to resolve the dispute. The plaintiffs seek to recover from the Employer Trustees the amount of the surplus and the deficiency in contributions.[4] We believe that the plaintiffs intend to assert this cause of action under LMRA section 302(c)(5), 29 U.S.C. Sec. 186(c)(5) (Supp. II 1978), as well as under section 404 of ERISA, 29 U.S.C. Sec. 1104 (1976). Count IV mentions only ERISA, but we must read it in conjunction with the amended complaint's general jurisdictional pleadings, which include section 302.
 
 
 24
 We need not decide the availability of a remedy for the plaintiffs under section 302(c)(5), however, because in our opinion an adequate alternative remedy is available under ERISA. ERISA imposes fiduciary duties of loyalty and care on trustees such as the Employer Trustees. Section 1104(a)(1) states that a fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of ... providing benefits to participants and their beneficiaries [and] defraying reasonable expenses of administering the plan."[5] The fiduciary shall perform these functions "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims ...." 29 U.S.C. Sec. 1104(a)(1)(A), (B) (1976). Section 1109, in turn, holds the trustees "personally liable to make good to [the] plan any losses to the plan" resulting from their breach of fiduciary duty. 29 U.S.C. Sec. 1109(a) (1976). Finally, section 1132 gives a beneficiary or fiduciary an action for appropriate relief under section 1109. 29 U.S.C. Sec. 1132(a)(2) (1976).
 
 
 25
 The Employer Trustees argue that the plaintiffs' action under ERISA is barred both by the statute of limitations and by the fact that certain conduct essential to the plaintiffs' proof occurred before ERISA's effective date. We reject both of these arguments. The Employer Trustees base their limitations argument on section 413 of ERISA, which states in part that no action may be commenced "three years after the earliest date ... on which a report from which [the plaintiff] could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this subchapter ...." 29 U.S.C. Sec. 1113(a)(2) (1976). The Employer Trustees maintain that the letter sent by the Trust Fund's counsel to the Department of Labor after the Umpire rendered his decision was a "report" from which the plaintiffs could reasonably have been expected to gain knowledge of the alleged breach of duty. The Employer Trustees, however, do not explain, nor can we imagine, how the plaintiffs could have known of this letter. We therefore apply the six-year limitations period under ERISA section 1113(a)(1) and conclude that the plaintiffs' amended complaint was timely.
 
 
 26
 The Employer Trustees also argue that the plaintiffs have no cause of action under ERISA because the contributions creating the Blue Cross surplus were made before ERISA's effective date, January 1, 1975. We believe that the date of the contribution is irrelevant where the challenged conduct is not the employer's act of contributing but the trustee's misuse of the assets. See Morgan v. Laborers Pension Trust Fund, 433 F.Supp. 518 (N.D.Cal.1977). Here the Employer Trustees' challenged conduct--misuse of the Blue Cross surplus and failure to collect the proper amount of Employer contributions--occurred after ERISA's effective date. The question of the surplus apparently arose for the first time at a Trustee meeting on June 23, 1975, and the Trustees apparently did not reduce the contribution amount until after the Umpire's decision on September 8, 1975.
 
 
 27
 The cases cited by the Employer Trustees do not support their argument that the date of original contribution is decisive in actions alleging fiduciary breach. In Malone v. White Motor Corp., 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978), the Supreme Court simply noted that ERISA has no retroactive application. Id. at 499 n. 1, 98 S.Ct. at 1187 n. 1. In Reuther v. Trustees of Trucking Employers of Passaic and Bergen County Welfare Fund, 575 F.2d 1074 (3d Cir.1978), we held that ERISA section 1103(c)(2)(A), which imposes a time limit on the return of mistaken employer contributions, does not apply if the employer mistakenly made the contributions before ERISA's effective date. We did not suggest that the date of contribution was critical in all ERISA actions.
 
 
 28
 We also reject the argument that the Union Trustees are indispensable parties to this action. Cases cited by the defendants consider whether the trustees are indispensable to an action alleging violations of the trust agreement.[6] These cases do not require, however, that the plaintiff name all of the trustees as defendants. It is a well-established principle of trust law that multiple trustees who are at fault may be held jointly and severally liable. See Restatement (2d) of Trusts Sec. 258 (1959). If the Union Trustees are at fault, the defendants may join them.[7]
 
 
 29
 We therefore conclude that the plaintiffs have an action against the Employer Trustees under ERISA and will be entitled to a remedy if they can establish that the Employer Trustees breached their fiduciary duties under that Act. As noted above, ERISA requires that all fiduciaries act "solely in the interest of the participants and beneficiaries" (the duty of loyalty) and with the "care, skill, prudence, and diligence" of a prudent man acting in like circumstances (the duty of care). 29 U.S.C. Sec. 1104(a) (1976).[8] The district court, however, applied the "arbitrary and capricious" standard to the Employer Trustees' conduct. We believe this was incorrect.
 
 
 30
 The "arbitrary and capricious" standard derives from section 302(c)(5) of the LMRA. That section imposes a duty of loyalty on section 302 trustees by permitting employer contributions to a welfare trust fund only if the contributions are used "for the sole and exclusive benefit of the employees ...." Section 1104 of ERISA imposes a similar duty of loyalty, and not surprisingly the courts have applied the "arbitrary and capricious" standard under ERISA as well. See, e.g., Music v. Western Conference of Teamsters Pension Trust Fund, 712 F.2d 413 (9th Cir.1983). Whether under ERISA or section 302, however, the courts have applied the arbitrary and capricious standard only where the issue was the legality of the trustees' decision to deny benefits to particular claimants. For example, in Elser v. I.A.M. National Pension Fund, 684 F.2d 648 (9th Cir.1982), cert. denied, --- U.S. ---, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983), the court applied the arbitrary and capricious standard in evaluating a trust fund's rules for cancellation of an employee's "past service credits" upon withdrawal of the employer from the plan. In Palino v. Casey, 664 F.2d 854 (1st Cir.1981), the court applied the same standard in assessing the trustees' decision to reduce the amount of benefits available to an unemployed claimant on the basis of the claimant's "self-payment" of contributions. And in Pompano v. Michael Schiavone & Sons, Inc., 680 F.2d 911 (2d Cir.), cert. denied, 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982), the court applied the standard to determine whether the trustees breached their fiduciary duties by denying a lump-sum payment to a claimant.
 
 
 31
 Although the courts have described the applicability of the arbitrary and capricious standard in rather overbroad language, they nonetheless have limited the use of the standard to cases involving personal claims for benefits. In other cases they have consistently applied the standards set forth explicitly in ERISA. In Donovan v. Bierwirth, 680 F.2d 263 (2d Cir.), cert. denied, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982), for example, the court applied the "sole benefit" standard of section 1104 to assess the trustees' decision not to sell certain stockholdings to an offeror making a hostile tender offer. See also Donovan v. Cunningham, 716 F.2d 1455 (5th Cir.1983); Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255 (5th Cir.1980), on appeal from remand, 695 F.2d 531 (11th Cir.1983); Davidson v. Cook, 567 F.Supp. 225 (E.D.Va.1983).
 
 
 32
 The use of different fiduciary standards in these cases is justified by the different challenge to fiduciary loyalty that each type of action presents. In actions by individual claimants challenging the trustees' denial of benefits, the issue is not whether the trustees have sacrificed the interests of the beneficiaries as a class in favor of some third party's interests, but whether the trustees have correctly balanced the interests of present claimants against the interests of future claimants. As the court explained in Elser, supra, "the purpose of the Fund is to provide benefits to as many intended employees as is economically possible while protecting the financial stability of the Fund." 684 F.2d at 656. In such circumstances it is appropriate to apply the more deferential "arbitrary and capricious" standard to the trustees' decisions. In the latter type of action, the gravamen of the plaintiff's complaint is not that the trustees have incorrectly balanced valid interests, but rather that they have sacrificed valid interests to advance the interests of non-beneficiaries.
 
 
 33
 In the present action, the plaintiffs' claims are in the second category. The plaintiffs allege that the Employer Trustees voted to give the Blue Cross surplus to the Employers and to reduce the Employers' contributions in order to promote the Employers' interests rather than the retirees' interests. We must therefore apply the strict statutory standards of ERISA to determine whether the Employer Trustees are entitled to summary judgment against the plaintiffs on Count IV.
 
 
 34
 This conclusion is not inconsistent with our decisions in Adams v. New Jersey Brewery Employees' Pension Trust Fund, 670 F.2d 387 (3d Cir.1982), and Rosen v. Hotel and Restaurant Employees & Bartenders Union, 637 F.2d 592 (3d Cir.), cert. denied, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). In Adams, we applied the arbitrary and capricious standard to determine whether the trustees had breached their fiduciary duty in drafting a partial termination clause that affected the employees' eligibility for benefits. We stated that
 
 
 35
 [t]he trustees of a pension plan have a fiduciary duty to preserve the financial security of a pension fund and to apply the assets of the fund for the benefit of the employees to the greatest extent possible. We recognize that these respective obligations are often conflicting. Any action taken by the trustees is bound to be categorized as arbitrary by those adversely affected by it. Partly because of these conflicting obligations, trustees are given broad discretion to act. Our role in reviewing the actions of the trustees of pension funds is limited.
 
 
 36
 670 F.2d at 397 (footnotes omitted). In Rosen we applied both the "prudent man" and the "arbitrary and capricious" standards: we applied the former to the trustees' failure to notify an employee that his employer had failed to contribute to the fund, and to the trustees' failure to enforce the contribution; we applied the latter to the trustees' decision to deny benefits to the employee. 637 F.2d at 598-601. In neither Adams nor Rosen did we apply the arbitrary and capricious standard to a trustee decision allegedly made in furtherance of third party interests. Cf. Nedd v. United Mine Workers, 556 F.2d 190, 207-14 (3d Cir.1977), cert. denied, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978).
 
 
 37
 Having decided that the fiduciary standards set forth in section 1104 of ERISA govern the present action, we now consider the plaintiffs' specific claims of fiduciary breach. The district court focused its examination of these claims on the Trustees' collective decision to refer the surplus dispute to an Umpire under section 302(c)(5)(B), 29 U.S.C. Sec. 186(c)(5)(B) (1976). The district court also emphasized the fact that the Trustees' counsel, after receiving the Umpire's decision, sent a letter to the Department of Labor requesting an opinion on whether the return of the surplus would violate ERISA. In our view this exclusive focus on events after the original deadlock between the Employer Trustees and Union Trustees was incorrect. The plaintiffs direct their charge of fiduciary breach in Count IV not merely to the Employer Trustees' resolution of the dispute over the surplus, but also to the Employer Trustees' original decision to give the surplus to the Employers. Before examining the decision to give the dispute to the Umpire, we must consider whether the Employer Trustees breached their fiduciary duties in making this original decision.
 
 
 38
 The fact that the Trustees submitted their dispute to the Umpire would be irrelevant if the dispute itself were the result of a breach of fiduciary duty. Cf. Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1260-61 (5th Cir.1980) (remanding to determine whether trustees deadlocked in violation of fiduciary duties), on appeal from remand, 695 F.2d 531 (11th Cir.1983). The first question to be answered, therefore, is whether the Employer Trustees acted with the requisite prudence and with complete and undivided loyalty to the beneficiaries in voting to credit the Employers with the Blue Cross surplus. Cf. Sinai Hospital of Baltimore, Inc. v. National Benefit Fund for Hospital & Health Care Employees, 697 F.2d 562, 567 (4th Cir.1982). We must consider, for example, whether the Employer Trustees voted as they did on the instructions of the Employers; whether they took time to investigate the merits of alternative courses of conduct; and whether they consulted with others, for example their attorneys. We do not intend this list of considerations to be exhaustive. See, e.g., Ironworkers Local No. 272 v. Bowen, 695 F.2d 531, 536 (11th Cir.1983); Donovan v. Bierwirth, 680 F.2d 263, 272-76 (2d Cir.), cert. denied, 103 S.Ct. 488 (1982); Rosen, supra, 637 F.2d at 600-01.
 
 
 39
 We do not believe that we should consider the merit of the Umpire's decision in determining whether a fiduciary breach exists for which the Employer Trustees may be held liable. The Umpire is not empowered to decide questions of fiduciary breach, so his decision clearly is not directly relevant to our inquiry. See Cutaiar v. Marshall, 590 F.2d 523 (3d Cir.1979). Moreover, we do not believe that the merit of the Umpire's decision may "cure" the Employer Trustees' breach in creating the deadlock. The Umpire process is itself a burden on the retirees' rights if it has been invoked in breach of fiduciary duties. It is a rule of trust law that the objective merit of a decision will not cure a fiduciary breach. See, e.g., Donovan v. Cunningham, 716 F.2d 1455, 1467 (5th Cir.1983); G. Bogert, Law of Trusts Sec. 95 (5th ed. 1973).
 
 
 40
 Unfortunately, the summary judgment record contains almost no evidence revealing what factors the Employer Trustees considered in deciding to vote to credit the Employers with the surplus. The Employer Trustees moved for summary judgment on the ground that the plaintiffs had no valid claim. They therefore had "the burden of producing evidence, of the necessary certitude, which negatives the [plaintiffs'] claim." J. Moore, W. Taggart & J. Wicker, 6 Moore's Federal Practice p 56.15 (1983). This they have not done, so we must reverse the district court's order granting summary judgment on Count IV and remand for further proceedings.
 
 
 41
 We may dispose of the plaintiffs' other claim of fiduciary breach, however. The plaintiffs argue that the Employer Trustees breached their fiduciary duty in referring the surplus dispute to the Umpire for resolution. According to the plaintiffs, this resort to the Umpire was a breach of duty because the Umpire had no jurisdiction to construe the terms of the collective bargaining agreements and therefore could not determine who should get the surplus. The district court agreed that the Umpire had no jurisdiction but nonetheless found no fiduciary breach because the question of the Umpire's jurisdiction was a difficult one. We disagree with the district court's conclusion that the Umpire lacked jurisdiction. Thus we need not decide whether the referral of a dispute to an umpire who lacked jurisdiction would, in itself, form the basis for a cognizable claim of fiduciary breach.
 
 
 42
 The district court's ruling on the Umpire's jurisdiction was based on the language of LMRA section 302(c)(5)(B), which states that an umpire shall be appointed "in the event the employer and employee groups [of trustees] deadlock on the administration of [the trust fund] ...." 29 U.S.C. Sec. 186(c)(5)(B) (1976) (emphasis added). The district court explained that the interpretation of a collective bargaining agreement is not a matter of "fund administration".
 
 
 43
 In our view the Trust Agreement may expand the jurisdiction of the Umpire beyond that required by section 302. See Ader v. Hughes, 570 F.2d 303, 308-09 (10th Cir.1978). The Agreement in this case provided that the Umpire was to arbitrate disputes "concerning any action to be taken by the Trustees pursuant to this Trust Agreement." The only matters placed outside the Umpire's jurisdiction were those arising under the Agreement or Welfare Plan "as to which the Trustees are without power of decision." Undoubtedly the Trustees had the power to decide on the meaning of the bargaining agreements insofar as such interpretation related to the discharge of their duties as trustees. The Agreement prohibited the Umpire from amending or modifying the bargaining agreements, but it placed no restrictions on the Umpire's power to interpret the agreements in the event the Trustees became deadlocked. In our view this language clearly empowered the Umpire to resolve the dispute about the proper use of the surplus. See Sandman v. Local Union No. 141, Sheet Metal Workers International Association, 705 F.2d 865, 868 (6th Cir.1983). It is therefore unnecessary for us to consider whether the interpretation of collective bargaining agreements is also a matter of "fund administration" under section 302.
 
 
 44
 In sum, we believe that the Umpire in this case had jurisdiction to resolve the dispute, and we therefore reject the plaintiffs' claim that the Employer Trustees breached their fiduciary duty by referring the surplus dispute to the Umpire. We need not consider, and do not decide, whether the plaintiffs would have stated a cognizable claim of fiduciary breach had the Umpire lacked jurisdiction. We will, however, remand this case for further consideration of the charge of fiduciary breach in the vote to return the surplus to the Employers.
 
 C. Counts II and III
 
 45
 The plaintiffs charged in Count II that the Employers[9] breached the Agreement by failing to pay the full amount of contributions required by the Employers' various collective bargaining agreements. The plaintiffs charged in Count III that the Employers illegally diverted the Blue Cross surplus to their own use. The district court denied all motions for summary judgment on these counts but certified four questions for interlocutory appeal under 28 U.S.C. Sec. 1292(b).
 
 
 46
 Before answering the certified questions,[10] we consider the propriety of permitting the claims against the Employers in Counts II and III to continue if, on remand, the district court should again enter judgment in favor of the Employer Trustees in Count IV.[11] The plaintiffs apparently assert their claims against the Employers under LMRA sections 301 and 302(c)(5), 29 U.S.C. Secs. 185, 186(c)(5) (1976 & Supp. II 1978), and ERISA section 502, 29 U.S.C. Sec. 1132 (Supp. IV 1980). The question is whether the plaintiffs may recover against the Employers under these statutes without first establishing that the Employer Trustees breached their fiduciary duties. We conclude that they may not.
 
 
 47
 In our view the plaintiffs seek to assert, in "derivative" fashion, the rights of the Trust Fund to use the Blue Cross surplus to purchase insurance protection for the Trust Fund's beneficiaries and to receive the required amounts of contributions from the Employers. In order to assert these derivative rights, the plaintiffs must establish that the Trustees--or some group of the Trustees--breached their fiduciary duties by transferring Fund assets to the Employers and by failing to enforce the Fund's rights to the required amounts of Employer contributions. This view of the plaintiffs' claims as derivative is consistent with the law of trusts, which provides that,
 
 
 48
 if the trustee holds in trust a contract right against a third person and the trustee improperly refuses to bring an action to enforce the contract, the beneficiaries can maintain a suit in equity against the trustee joining the obligor as a co-defendant.
 
 
 49
 * * *
 
 
 50
 * * *
 
 
 51
 If the trustee does not commit a breach of trust in failing or declining to bring an action against the third person, the beneficiaries cannot maintain a suit against the trustee and the third person. If it is prudent under the circumstances to refrain from bringing an action, so that the trustee does not violate his duty in so refraining, the beneficiaries cannot compel him to bring the action, nor can they themselves maintain a suit in equity against the third person.
 
 
 52
 A. Scott, 4 Law of Trusts Sec. 282.1 (3d ed. 1967). It follows from this rule that the beneficiary may recover trust property transferred to a third party if the transfer were a breach of the trustee's fiduciary duty and also a breach of the contract between the trustee and the third party.
 
 
 53
 We find indirect support for our conclusion in an earlier holding of this court. In Nedd, supra, we observed that "[w]here the trustee may sue and wrongfully fails to do so, the beneficiary may sue the trustee as well as the party or parties the trustee failed to sue." 556 F.2d at 197 & n. 10. Nor is our conclusion inconsistent with the predecessor to that decision, Nedd v. United Mine Workers, 400 F.2d 103, 105 & n. 4, 107 (3d Cir.1968), where we held that the trustees were indispensable parties, either as plaintiffs or defendants, in an action by the beneficiaries against the union for failure to ensure that the employers contributed the required amounts. See also Maita v. Killeen, 465 F.Supp. 471, 473 (E.D.Pa.1979); International Brotherhood of Teamsters v. Kebert Construction Co., 225 F.Supp. 58, 60 (W.D.Pa.1964).
 
 
 54
 We also note the importance of protecting the trustees' authority to manage the assets and enforce the rights of the trust fund within the limits imposed by the trustees' fiduciary duties. We recognize the complexity of many trust fund management decisions and the need to allow the trustees to make those decisions free from the second-guessing of less well-informed beneficiaries. The trustees are able, and indeed are obligated, to consider the collective interests of the fund and its beneficiaries, and their performance will only be handicapped if we allow individuals to file actions protecting narrower interests without first showing that the trustees have breached their fiduciary duties. For similar reasons the law of corporations has declined to recognize the derivative standing of shareholders to enforce the corporation's rights unless the shareholders first show that the directors of the corporation have wrongfully failed to protect those rights. See H. Henn & J. Alexander, Laws of Corporations Sec. 365 (3d ed. 1983).
 
 
 55
 ERISA's remedial scheme reflects the intention of its drafters that the enforcement of contribution obligations is the function, at least in the first instance, of the trustees. As we have recently explained in Livolsi v. Ram Construction Co., Inc., 728 F.2d 600 at 601-602 (3d Cir.1984), section 1132(a)(1)(B) of ERISA protects rights under the benefit plan that are personal to the beneficiary. Section 1132(a)(3), on the other hand, creates a remedy for "structural, systematic violations of the ERISA scheme." Livolsi, at 602. This latter remedy is available to beneficiaries as well as fiduciaries, but it provides only for equitable relief. In 1980, however, Congress added section 1132(g)(2), which authorizes awards for unpaid employer contributions, the interest thereon, and attorneys' fees and costs, but only in actions "by a fiduciary for or on behalf of a [multiemployer] plan ...." 29 U.S.C. Sec. 1132(g)(2) (Supp. IV 1980).[12] It is clear, therefore, that although the beneficiaries of a plan may have a right to injunctive relief for unpaid contributions (a matter we do not decide), they do not have a direct action for damages under ERISA.
 
 
 56
 Finally, we look to the Agreement itself for support. The Agreement gave the Trustees the power to interpret its terms. Such interpretation, when made in good faith, was binding on all parties, including the beneficiaries. p 4.3. It also authorized the Trustees to "compromise, settle, arbitrate and release claims or demands in favor of or against the trust on such terms and conditions as the Trustees may deem advisable." p 4.4(e). Most importantly, the Agreement provided that the Trustees "shall have the power to demand, collect and receive the contributions payable pursuant to [the Agreement and the various bargaining agreements] and are authorized to enforce payment by instituting, proceeding or intervening in such actions as they deem necessary for the collection of such contributions." p 5.2 (emphasis added).
 
 
 57
 For these reasons we are convinced that the beneficiaries of the Trust Fund have no direct action against the Employers either under the Labor Management Relations Act or ERISA for deficient contributions to the Trust Fund or illegal receipt of the Blue Cross surplus. Moreover, the beneficiaries may not maintain a derivative action against the Employers unless they first show a fiduciary breach in the Trustees' decision to return the surplus and require a lower level of Employer contributions.[13]
 
 
 58
 We turn now to the four questions certified by the district court. We have already answered the first question--whether the Umpire had jurisdiction to construe the collective bargaining agreements in order to resolve the deadlock--in our discussion of the plaintiffs' claims against the Employer Trustees in Count IV.[14] We concluded that, aside from questions of fiduciary breach in the deadlock, the Umpire did have jurisdiction. This fact is irrelevant to Counts II and III, however, if the plaintiffs gain derivative standing to proceed against the Employers by showing that the Employer Trustees did breach their fiduciary duty by voting to return the surplus to the Employers. Such a breach, as we have already explained, would render the entire Umpire process irrelevant.
 
 
 59
 Question two asks whether the plaintiffs' claims in Counts II and III are barred by the relevant statute of limitations. We conclude that they are not barred. As derivative claimants, the plaintiffs are asserting the rights of the Trust Fund under the Agreement, and their claims are subject to a six-year statute of limitations. This is true whether the claims are for breach of contract under LMRA section 301, see International Union, UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); 2A N.J.Stat.Ann. Sec. 14.1 (West Supp.1983), or for violations of ERISA, see 29 U.S.C. Sec. 1113 (1976). The plaintiffs filed their amended complaint within this six-year period.
 
 
 60
 We will consider questions three and four together. Question three asks whether the plaintiffs must either exhaust their remedies under the collective bargaining agreements or show that the exhaustion requirement is excused because of the Union's breach of its duty of fair representation or the Employers' repudiation of the grievance procedures. Question four asks whether the Employers did in fact repudiate these procedures.
 
 
 61
 We hold that the plaintiffs, as derivative claimants, need not exhaust their remedies under the bargaining agreements. If they can establish that the Employer Trustees breached their fiduciary duties by voting to give the surplus to the Employers, the plaintiffs will be able to assert the rights of the Trust Fund as if they themselves were the Trustees. This is the meaning of a "derivative" suit. The plaintiffs will therefore be obligated to pursue their remedies under the bargaining agreements only if the Trustees would be similarly obligated. We have recently held that trustees are not so obligated. See Trustees of the Local No. 478 Trucking and Allied Industries Pension Fund v. Siemens Corp., 721 F.2d 451 (3d Cir.1983). We note that the Supreme Court may rule in the near future on this same issue. See Robbins v. Prosser's Moving and Storage Co., 700 F.2d 433 (8th Cir.) (in banc), cert. granted, --- U.S. ---, 104 S.Ct. 66, 78 L.Ed.2d 81 (1983).
 
 III. CONCLUSION
 
 62
 The district court's grant of summary judgment in favor of the defendants on Count I will be affirmed. The district court's grant of summary judgment in favor of the defendants on Count IV will be reversed and the matter remanded for further proceedings. The claims in Counts II and III will also be remanded for further proceedings consistent with our discussion and our answers to the four questions certified in the district court's order under 28 U.S.C. Sec. 1292(b). The parties shall bear their own costs.
 
 
 
 [1]
 The amended complaint named three other firms as defendants, but claims against them have been dismissed and they are not parties to this appeal. These firms are P. Ballantine & Sons, Inc., G. Kreuger Brewing Co., and Hoffman Beverage Co. A fourth Employer, Liebmann Breweries, Inc., was named in the district court's order as a defendant, but it has not appealed
 
 
 [2]
 The Employers have not challenged the plaintiffs' standing to assert their claims in Count I
 
 
 [3]
 Paragraph 5.1 of the Agreement stated that "[e]ach Employer shall pay to the Trustees the Employer Contributions in the amount required by the current and effective Collective Bargaining Agreement." Paragraph 6.1 stated that an Employer "shall cease to be an Employer under the Agreement whenever ... his obligation to make contributions to the Trust Fund is no longer required by a Collective Bargaining Agreement ...." Paragraph 8.2 stated that "[n]either this Trust nor the Welfare Plan imposes any obligation on any Employer to make any payments to the Fund; any such obligations are as to Employers derived solely from whatever provisions there may be in the Collective Bargaining Agreement from time to time ...."
 
 
 [4]
 We are not called upon to decide at this time whether, in view of the nature of the plaintiffs' claims and the scope of relief requested in Count IV, the non-party beneficiaries are indispensable to this action
 
 
 [5]
 ERISA speaks of "participants" and "beneficiaries". See 29 U.S.C. Sec. 1002(7), (8) (1976). For simplicity's sake, we will refer to these parties collectively as "beneficiaries"
 
 
 [6]
 We consider this issue elsewhere in this opinion. See infra at p. 337
 
 
 [7]
 We express no opinion on the question of the statute of limitations in a third-party action against the Union Trustees
 
 
 [8]
 The Agreement in this case set forth a different and lower standard of fiduciary duty, providing that the Trustees would only be liable for "willful misconduct, bad faith, or gross negligence." ERISA, however, preempts contractual language insofar as it is inconsistent with the statutory language. 29 U.S.C. Sec. 1104(a)(1)(D) (Supp. IV 1980)
 
 
 [9]
 Although the plaintiffs have named the Trust Fund as a defendant in Counts II and III, they have requested no relief against it, and we will therefore only discuss the plaintiffs' claims against the Employers. We nonetheless reject the Trust Fund's argument that it should be dismissed. In view of our holding that the plaintiffs are asserting derivative claims, we believe that the Trust Fund is an indispensable party to this action
 
 
 [10]
 As we have frequently held, the appellate court is not limited to the questions certified under section 1292(b) but is free to consider "all grounds advanced in support of the grant of summary judgment and all grounds suggested for sustaining its denial." Consolidated Express, Inc. v. New York Shipping Assoc., Inc., 602 F.2d 494, 502 (3d Cir.1979), vacated on other grounds, 448 U.S. 902, 100 S.Ct. 3040, 65 L.Ed.2d 1131 (1980). See also Katz v. Carte Blanche Corp., 496 F.2d 747, 752-56 (3d Cir.) (in banc), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974)
 
 
 [11]
 We reach this issue, despite our reversal of the grant of summary judgment in favor of the Employer Trustees, so that the parties may avoid the time and expense of further proceedings against the Employers if, on remand, the Employers Trustees are again successful in defending against the claim in Count IV
 
 
 [12]
 The Senate Committee on Labor and Human Resources explained the reason for the amendment:
 Recourse available under current law for collecting delinquent contributions is insufficient and unnecessarily cumbersome and costly. Some simple collection actions brought by plan trustees have been converted into lengthy, costly and complex litigation concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions. This should not be the case. Federal pension law must permit trustees of plans to recover delinquent contributions efficaciously.
 Staff of Senate Comm. on Labor and Human Resources, 96th Cong., 2d Sess., S. 1076: The Multiemployer Pension Plan Amendments Act of 1980, at 44 (Comm. Print April 1980) (emphasis added). See also 126 Cong.Rec. S11673 (daily ed. Aug. 26, 1980) (remarks of Sen. Williams); 126 Cong.Rec. H7899 (daily ed. Aug. 26, 1980) (remarks of Rep. Thompson); 126 Cong.Rec. S10102 (daily ed. July 29, 1980) (colloquy between Sen. Williams and Sen. Matsunaga).
 A trustee action is only available under section 1132(g)(2) against plans covered by section 1145. That section applies only to multiemployer plans. 29 U.S.C. Sec. 1145 (Supp. IV 1980). We express no opinion on whether the Trust Fund in the present case is such a plan.
 
 
 [13]
 We are not called upon to decide at this time whether beneficiaries in the present type of derivative action are required to make a "demand" on the Trustees to bring suit in the name of the Trust Fund or whether, if such demand is generally required, it should be excused in the present circumstances
 
 
 [14]
 See text at p. 335, supra