**William V. BÍDWELL, et al.**

v.

**Edward R. GARVEY, et al.**

**Thomas J. CONDON, et al.**

v.

**NATIONAL FOOTBALL LEAGUE, et al.**

**Civ. Nos. JH–87–509, JH–87–698.**

United States District Court,
D. Maryland.

May 7, 1990.

Lee T. Ellis, Jr., Sargent Karch, Leonard Freiman and Baker & Hostetler, College Park, Md., for plaintiffs.

Joseph A. Yablonski, John F. Colwell and Yablonski, Both & Edelman, Washington, D.C., Robert V. Atmore, Luke H. Terhaar and Lindquist & Vennum, Minneapolis, Minn., for defendants.

## MEMORANDUM OPINION

JOSEPH C. HOWARD, District Judge.

Pending before the Court are cross-motions for summary judgment. (Paper Nos. 71 and 72). Oppositions, (Paper Nos. 74 and 75), and replies have been filed. (Paper Nos. 75 and 77). Judge Herbert F. Murray referred these motions to Magistrate Daniel E. Klein for a report and rec-

ommendation which was issued on August 31, 1989. (Paper No. 81). Subsequently the parties filed objections to the report and recommendation, (Paper Nos. 83, 84, 85, and 86), as well as replies. (Paper Nos. 88 and 89). The motions are now ripe for disposition, and this case has been transferred to the undersigned. No hearing is necessary to resolve the legal issues presented. Local Rule 105.6.

The Bert Bell NFL Player Retirement Plan ("Plan") is a pension and benefit trust for the members of the National Football League Players Association ("NFLPA") and their families.[1] The Plan is managed by a seven member Retirement Board. Three members of the Retirement Board are appointed by the NFLPA,[2] three members are appointed by the National Football League Management Council ("NFLMC"),[3] and the Commissioner of the NFL is the seventh and a nonvoting member of the Retirement Board.[4]

The player trustees' counterclaims center on the conduct of the management trustees at two meetings of the Retirement Board. Count one generally alleges that the management trustees breached their fiduciary duty to the Plan by refusing to pursue contributions which the player trustees believed to be due at the August, 1986 meeting. Count two, in substance, alleges that the management trustees breached their fiduciary duty by failing to amend the Plan in order to permit greater benefits to the beneficiaries at the April, 1984 meeting.

## I. Players' Motion

The Court will first address the player trustees' motion for summary judgment.

For the reasons which follow, the Court holds that the management trustees breached their fiduciary duties to the Plan. In so doing the Court will analyze the issue somewhat differently than Magistrate Klein. However, the Court has conducted a *de novo* review and, but for page sixteen of the report and recommendation, the Court adopts Magistrate Klein's conclusions.

In 1982 the NFL Player's Association ("Player's Association") and the NFL Management Council ("Management Council")[5] negotiated a collective bargaining agreement which modified the prior 1977 agreement. The collective bargaining agreement required the various clubs represented by the Management Council to make an annual contribution of twelve and one-half million dollars. In addition, the contributions were conditioned on certain deductibility provisions of the Internal Revenue Code.

Early in 1984 the Management Council informed the Player's Association that the full contribution would not be made. According to the Management Council, the twelve and one-half million dollars were not currently deductible pursuant to the Internal Revenue Code, and therefore the full amount was not due. Three weeks later the Retirement Board convened and the player trustees objected to the partial contribution.

At this meeting, the player trustees proposed four resolutions in response to the partial contribution. First, they proposed that the Retirement Board demand immedi-

1. Bert Bell was the first Commissioner of the National Football League ("NFL"). One of Bert Bell's many achievements includes initiating the idea of a pension plan for professional football players.

2. The NFLPA appointees were: Edward Garvey, former Executive Director of the NFLPA; Danny Jiggetts, who played for the Chicago Bears; and Thomas Condon, who played for the Kansas City Chiefs. The Court will refer to these three members of the Retirement Board collectively as the player trustees.

3. The NFLMC appointees were: William Bidwell, owner of the St. Louis/Phoenix Football Cardinals; James Kensil, President of the New York Jets; and Michael Lynn, Executive Vice President of the Minnesota Vikings. The Court will refer to these three members of the Retirement Board collectively as the management trustees.

4. The Commissioner of the NFL was Pete Rozelle.

5. The NFL Management Council acts on behalf of the twenty-eight football clubs which belong to the National Football League of Professional Clubs.

ate payment, with interest, of the amount which had been withheld. Second, the player trustees suggested that the Retirement Board authorize legal action to recover the unpaid sums. Third, a resolution was proposed that Plan benefits be increased to ensure the current deductibility of contributions. Finally, it was proposed that a ruling on the deductibility be sought from the Internal Revenue Service.

In response to these resolutions, the management trustees abstained from voting on the first two resolutions, and voted against the third. As a result, these three resolutions did not pass. The fourth resolution, to seek an Internal Revenue Service ruling, was adopted unanimously.

Again in 1985 and 1986, when the contributions were due to the Plan, the Management Council informed the Player's Association that only partial payments would be made. In August of 1986 the Retirement Board met again. Also, once again, the player trustees proposed identical resolutions to demand full payment and institute litigation to recover the sums due and owing. These resolutions did not pass because the management trustees declined to vote in order to confer with counsel.

Finally, in March of 1987 the management trustees commenced an action against the player trustees. The complaint sought a declaration whether the contributions were due to the Plan under the collective bargaining agreement. The player trustees answered and also asserted the counterclaims which are at issue in the present motions. In addition, with the knowledge that the best defense is often a strong offense, the player trustees initiated a separate action against the Management Council, and others. The player trustees' complaint alleged that the failure to make full contributions was unlawful pursuant to statutory and common law causes of action.

Counterclaim plaintiffs, as the moving parties, bear the initial responsibility of informing the district court of the basis for their motion. The movants must specifically identify those portions of the record which they believe demonstrate the ab-

sence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The player trustees' motion for summary judgment argues that there is no dispute as to the facts which establish the management trustees' breach of trust to the Plan.

To meet the player trustees' properly supported motion for summary judgment, the management trustees must come forward with facts to present a sufficient disagreement to require submission to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). They cannot simply rest on their pleadings, but must point to specific evidence giving rise to a triable issue. *Supermarkets General Corp. v. Pathmark Title Co.*, 686 F.Supp. 535, 537 (D.Md.1987).

Of particular importance to this motion, denials in the form of legal conclusions, unsupported by documentation or specific facts, are insufficient to create issues of material fact that would preclude summary judgment. *Securities and Exchange Commission v. Bonastia*, 614 F.2d 908, 914 (3d Cir.1980). In addition, an affidavit containing only conclusions, void of any factual support will not create a jury question. *Barwick v. Celotex Corp.*, 736 F.2d 946, 959–960 (4th Cir.1984). That is, the existence of a mere "scintilla of evidence" in the management trustees' favor will be insufficient to survive a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

Because the substantive law determines which facts are the material facts, *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510, the Court must initially resolve a question of law. The player trustees have alleged a breach of fiduciary duty, and the Court has previously ruled that the Plan is a qualified pension trust under ERISA. Also, there is no dispute that the management trustees were each Plan fiduciaries pursuant to 29 U.S.C. § 1102(a). Therefore, the Court must determine the exact nature of the duty the management trustees owed to the Plan pursuant to the provisions of ERISA.

■ The statute provides for the duty of care as follows:

(1) ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and ...

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims....

29 U.S.C. § 1104(a)(1)(A) and (B). This is commonly called the prudent person standard.

The management trustees argue that an arbitrary and capricious standard should be applied to their actions. However, the Court adopts Magistrate Klein's report and recommendation, and holds that the arbitrary and capricious standard is inappropriate. In this case the player trustees have not asked the Court to review the management trustees' interpretation of the Plan's governing documents. Rather, what is at issue is the manner in which the management trustees chose to resolve the conflict at, and subsequent to, the Retirement Board meetings.

Stated another way, the player trustees have implicated the management trustees' fiduciary duty to safeguard the Plan. Thus, the prudent person standard applies to the management trustees' administration of the trust. That this is the proper standard was made clear in *Struble v. New Jersey Brewery Employees' Welfare Trust Fund*, 732 F.2d 325, 333–334 (3d Cir.1984), as well as the Magistrate's report and recommendation. *See also Payonk v. HMW Industries*, 883 F.2d 221, 225 (3rd Cir. 1989); *Rosen v. Hotel & Restaurant Employees' Bartenders Union*, 637 F.2d 592, 600 (3rd Cir.1981), *cert. denied*, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981); *Stahl v. Tony's Bldg. Materials, Inc.*, 875 F.2d 1404, 1409 (9th Cir.1989); *Schaefer v. Arkansas Medical Soc'y*, 853 F.2d 1487,

1491 (8th Cir.1988); *Trapani v. Consolidated Edison Employees' Mutual Aid Soc'y*, 693 F.Supp. 1509, 1514–15 (S.D.N.Y. 1988).

Case law has given further substance to the standard of care provided in 29 U.S.C. § 1104. For example, when a fiduciary has dual loyalties, as the management trustees did in their capacities as Plan trustees and club officers or owners, "the prudent person standard requires that he make a careful and impartial investigation.... A review of a fiduciary's independent investigation is one of the well-established yardsticks against which courts have customarily tested fiduciary conduct for prudence." *Schaefer*, 853 F.2d at 1492.

■ Where it is possible to question fiduciaries' loyalty, they "are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries." *Leigh v. Engle*, 727 F.2d 113, 126–6 (7th Cir.1984). Finally, the evaluation of a fiduciary's conduct is an objective one, not a subjective inquiry into a particular fiduciary's state of mind. *Restatement (Second) of Trusts* § 174, comment a; G. Bogert & G. Bogert, *The Law of Trusts & Trustees* § 541 at 157–58; *Katsaros v. Cody*, 744 F.2d 270, 279–80 (2d Cir.1984), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984).

■ The Court adopts Magistrate Klein's report and recommendation in connection with the finding that the management trustees were confronted with an inherent conflict of interest. If the management trustees had increased benefits or demanded payment, as club owners, they could have become immediately liable for the contribution. By choosing the option of delay and abstention, the management trustees were able to assure only partial payments.

If the management trustees had been successful, their strategy would have resulted in the St. Louis/Phoenix Football Cardinals benefiting by over $630,000, the New York Jets by over $693,000, and the

Minnesota Vikings by over $614,000 as well as benefits to all of the other football clubs. Judge Murray's July 22, 1988 order, of course, changed that. The Court is not holding that the management trustees could not act under these circumstances, or even that they could not act as they did. Rather, the Court holds that in the face of this direct conflict, the management trustees were obliged to act more carefully.

### A. Second Counterclaim

■ The second counterclaim alleges that by refusing to investigate the circumstances surrounding an increase in the benefits under the Plan, the management trustees failed to adequately discharge their duties to the Plan. This claim is directed at the April, 1984 Retirement Board meeting. The player trustees argue that no facts in the record show that the management trustees undertook an independent investigation of the proposal. As stated above, to survive this motion, the management trustees cannot simply rest on their pleading, but must raise specific facts which place the player trustees' contentions in dispute. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11. They have not done so.

At best, the management trustees argue that they did seek the advice of Mr. Karch at Baker & Hostetler before voting on the resolution. However, Mr. Karch also represented the Management Council and football clubs. This advice cannot be considered independent. *Katsaros v. Cody*, 568 F.Supp. 360, 367, 369 n. 12, *aff'd*, *Katsaros*, 744 F.2d at 270. The undisputed evidence shows that the management trustees, when faced with a conflict of interest, did not fulfill their obligations as fiduciaries to the Plan and secure independent advice concerning their options.

### B. First Counterclaim

■ The first counterclaim alleges that by refusing to independently investigate their vote for the resolutions involving immediate payment, the management trustees failed to adequately discharge their fiduciary duties to the Plan. This claim is directed at the August, 1986 Retirement Board meeting. Once again, the player trustees argue that no facts in the record show a dispute as to whether the management trustees undertook an independent investigation to consider options. Of particular importance is the fact that this was at least the second time the management trustees heard these resolutions.

At this meeting the management trustees abstained, and stated that the reason for their abstention was to confer with counsel. Although this was the proper decision of a prudent fiduciary, no such investigation was ever conducted. Subsequently, in March of 1987, without independent advice, the management trustees initiated this litigation. The legal advice from Baker & Hostetler, of course, cannot be considered independent. Accordingly, without evidence of an independent investigation, the management trustees do not survive the player trustees' motion for summary judgment. *Supermarkets General Corp.*, 686 F.Supp. at 537.

### II. Management's Motion

The thrust of the management trustees' motion for summary judgment is threefold. First, it is based on the premise that the management trustees did not believe they had the authority to amend the Plan. Second, that there was a good faith dispute as to whether the full contribution was in fact due. Third, the management trustees had a good faith belief that the player trustees were impermissibly engaging in collective bargaining. Based on their good faith, the management trustees argue that their conduct was not a breach of fiduciary duty as a matter of law.

However, as discussed above, the management trustees did breach their fiduciary duties in failing to undertake an investigation. Thus, the issue presented is whether the management trustees' good faith in some way negates their obligation to make an independent investigation. The answer, of course, is that it does not.

At issue in this case is the management trustees' independent investigation, and as such, "[t]he fact that the trustee[s were]

honest and well intentioned will not excuse [them] from the manifestation of the required amount of diligence and prudence." *Bogert*, § 543 at 217. Thus, although the Court adopts Magistrate Klein's conclusion that the trustees had the authority to amend the Plan, this point is reached only to deny the management trustees' motion for summary judgment.

What is important to note is that the management trustees are not being held liable for refusing to amend the Plan, for refusing to demand the full contribution, or refusing to engage in collective bargaining. They are liable for failing to make a scrupulous and independent investigation of their options in the face of an obvious conflict of interest.

### *III. Damages*

■ Title Twenty–Nine of the United States Code section 1109 provides in pertinent part:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, ... and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

The player trustees request that the management trustees be held liable for the losses which resulted from their breach of duty, in addition to removal of the management trustees involved in the present litigation.

With regard to monetary losses, the player trustees argue that if the management trustees had acted according to their duty, the Plan would have received full contributions. However, the player trustees have introduced no evidence showing a causal connection between the breach and the alleged losses. The player trustees cannot prevail on their motion for summary judgment by simply alleging causation.

Furthermore, the player trustees' motion does not point to an absence of disputed facts to support their claim for monetary damages. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. Without evidence of how a prudent trustee would have acted, or what a scrupulous and independent investigation would have disclosed, causation is not established and damages cannot be awarded. Accordingly, the issue of damages must be presented to a finder of fact.

In addition, the player trustees request that the management trustees be removed. However, the Court agrees with the management trustees that this exceptional form of relief is not appropriate based on the facts of this case. The cases in which this extraordinary remedy has been employed involve very egregious breaches, and often "repeated and substantial violations of [the trustees'] responsibilities." *Marshall v. Snyder*, 572 F.2d 894, 901 (2d Cir.1978).

### *IV. Conclusion*

The Court holds that the management trustees did not discharge their duties to the Plan prudently because they failed to seek independent advice. Accordingly, the management trustees are liable for this breach pursuant to 29 U.S.C. § 1109. What remains to be determined are the damages to the Plan, if any, which were caused by the management trustees' breach of duty.

The Court will enter a separate order.

### ORDER

In accordance with the foregoing memorandum opinion of even date, it is this 7th day of May, 1990, by the United States District Court for the District of Maryland,

ORDERED:

1) that the counterclaim plaintiffs' motion for summary judgment as to the first counterclaim BE, and the same hereby IS, GRANTED as to liability;

2) that the counterclaim plaintiffs' motion for summary judgment as to the first counterclaim BE, and the same hereby ..S, DENIED as to damages;

3) that the counterclaim plaintiffs' motion for summary judgment as to the second counterclaim BE, and the same hereby IS, GRANTED as to liability;

4) that the counterclaim plaintiffs' motion for summary judgment as to the second counterclaim BE, and the same hereby IS, DENIED as to damages;

5) that the counterclaim defendants' motion for summary judgment BE, and the same hereby IS, DENIED.