647 F.Supp. 1109 (1986)
Robert ANDERSON, Jr., et al., Plaintiffs,
v.
ALPHA PORTLAND INDUSTRIES, INC., et al., Defendants.
No. 82-1413C(3).
United States District Court, E.D. Missouri.
September 30, 1986.
Sheldon Weinhaus, Levin and Weinhaus, Joseph B. Moore, Asst. U.S. Atty., Gary R. Slemmens, Veteran Admin., St. Louis, Mo., for plaintiffs.
George S. Hecker, Michael G. Biggers, Stephen R. Snodgrass, Bryan, Cave, *1110 McPheeters & McRoberts, Edward K. Fehlig, Ziercher, Hocker, Human, Michenfelder, Nations & Jones, James I. Singer, Charles A. Werner, Schuchat, Cook & Werner, St. Louis, Mo., Robert L. Dameron, Albert F. Kuhl, Blake & Uhlig, Kansas City, Kan., for defendants.

MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court after a four-day nonjury trial to determine defendants' liability with respect to the merits of class plaintiffs' claims.[1]
Pursuant to the Labor Management Relations Act (LMRA) and the Employee Retirement Income Security Act (ERISA), named plaintiffs, retired hourly employees of defendant Alpha Portland Industries, Inc. (Alpha), in general seek on behalf of themselves and a class relief for defendants' allegedly improper termination of life and health insurance benefits previously provided to Alpha retirees and their dependents pursuant to the defendant Insurance and Health Plan for Hourly Employees, Alpha Portland Cement Company (Plan). Defendant The Equitable Life Assurance Society of the United States (Equitable) provided and participated in the administration of the policies at issue here. Defendants deny liability.
Having carefully considered the record herein, including the pleadings, the parties' joint stipulation of uncontested facts, the relevant exhibits and testimony, and the parties' argument, the Court hereby makes and enters the following findings of fact and conclusions of law.

Findings of Fact
1. Prior to their retirement, named plaintiffs each worked as an hourly employee of the cement division of defendant Alpha Portland Industries, Inc. (Alpha).
2. Defendant Alpha was at all relevant times a corporation and an employer engaged in commerce and in activities affecting commerce. Until 1972, defendant Alpha was known as Alpha Portland Cement Company, and since 1985 it it known as Slattery Group, Inc.
3. In 1946, defendant Alpha unilaterally created the defendant Insurance and Health Plan for Hourly Employees, Alpha Portland Cement Company (Plan). The Plan covered only hourly workers and hourly retirees from Alpha's cement plants.
4. Defendant The Equitable Life Assurance Society of the United States (Equitable) participated in the administration of the Plan.
5. Named plaintiffs represent a certified class consisting of:
A. All persons defined as retirees under the terms of Alpha Portland Industries, Inc.'s Insurance and Health Plan for Hourly Employees (Plan), whose benefits were terminated under said Plan by defendants on or after May 1, 1982.
B. All beneficiaries under the terms of the Plan who would have been entitled to receive benefits under the Plan by reason of their relationship to retirees, whose entitlement to benefits from and after May 1, 1982, was terminated by defendants.
C. Kin of deceased retirees and of deceased beneficiaries entitled to benefits under the terms of said Plan by reason of familial relationship to retirees, where the death occurred on or after May 1, 1982. (This class includes the surviving spouse and if no surviving spouse, the children of the deceased retiree or deceased beneficiary.)
6. At the time of their respective retirements from Alpha, named plaintiffs and members of the first plaintiff subclass were eligible to receive health and life insurance provided to hourly retirees under the terms of the Plan then in effect. When this litigation began, there were approximately 453 retirees covered by the Plan. This total includes retirees from Alpha's cement plants in St. Louis, Missouri; Orange, *1111 Texas; Birmingham, Alabama; Lime Kiln, Maryland, Cementon, New York; Jamesville, New York; Martin's Creek, Pennsylvania; LaSalle, Illinois; and Ironton, Ohio.[2]
7. From 1946 until 1955, Alpha unilaterally continued and modified the Plan. During this period, there were no formal Plan documents but there were booklets describing the benefit programs.
8. The 1946 Plan booklet did not contain provisions directed explicitly to retired employees. No term of duration was set forth in this booklet.
9. As revised in 1948, the Plan booklet stated that after retirement, if the employee was qualified as specified, life insurance under the Plan could continue in one-half the amount provided to working hourly employees. Booklet for Plan Revised November 1, 1948, at pages 8 and 2. The booklet stated the Plan would become effective, if at all, on November 1, 1948. Alpha explicitly stated in the booklet that the company hoped
to continue the Plan indefinitely but reserves the right to change, modify, or discontinue it if future conditions make such action necessary or if reduction of Company earnings make it impossible to continue.
Id. at 7 (continuation statement).
10. As revised in 1950, the booklet stated that qualified retirees would "have the privilege of continuing one-half the amount of their Group Life Insurance for which they were insured immediately prior to retirement." Plan Booklet-Revised November 1, 1950, at 9. The booklet also provided that:
Employees who retire with the consent of the Alpha Company will have the privilege of continuing their Hospitalization and Surgical Insurance for themselves and dependents. However, the Hospital Benefits for each covered person will be limited to a total of 31 days in any calendar year and Surgical Expense Benefits not to exceed one maximum surgical claim in any calendar year.
Id. at 14. This booklet stated the Plan revisions "will become effective November 1, 1950," and had the same "continuation statement" as the 1948 booklet. Id. at 8.
11. As revised in 1952, the booklet stated the life insurance benefits provided to hourly employees could continue for hourly employees who retired if they had attained fifteen years of continuous service, rather than the twenty-five years of service required before the 1952 revision. November 1, 1952, Plan Booklet at 8-9. That booklet also contained a hospital and surgical expense benefit provision identical to the one in the 1950 booklet except that hospital benefits for each covered person were
limited to a total of 31 days and a maximum reimbursement for additional charges not to exceed $100 in any one calendar year and Surgical Expense Benefits may not exceed one maximum surgical claim in any calendar year.
Id. at 13-14. The 1952 booklet stated the revised Plan "will become effective on November 1, 1952;" and had the same continuation statement as the 1948 and 1950 booklets. Id. at 7; 3.
12. These booklets did not contain specific eligibility requirements for retired employees, although such requirements were set forth for other employees and their dependents. See 1946 Plan Booklet at 4; 1948 Plan Booklet at 6; 1950 Plan Booklet at 7; 1952 Plan Booklet at 6.
The 1946, 1948, 1950, and 1952 booklets stated Equitable underwrote the policies and provided that Equitable would determine the amounts paid for "cutting operations" not listed within the booklets. 1946 Plan Booklet at 1, 9; 1948 Plan Booklet at 2, 12; 1950 Plan Booklet at 4, 12-13; 1952 Plan Booklet at 3, 12.
Each booklet stated the relevant Plan was funded by contributions from the employees and the company. 1946 Plan Booklet *1112 at 1, 2, 5; 1948 Booklet at 3, 5, 7; 1950 Plan Booklet at 4, 5, 8; 1952 Plan Booklet at 3, 4, 7. The insured employees received certificates evidencing the insurance and were referred to the "terms and provisions of the Group Insurance contracts" between Equitable and Alpha to resolve questions relating to the Plan. 1946 Plan Booklet at 4, 20; 1948 Plan Booklet at 7, 24; 1950 Plan Booklet at 7, 24; 1952 Plan Booklet at 7, 24.
13. From 1955 until 1982, Alpha, the International Cement, Lime, Gypsum and Allied Workers Union (union), and the union's Alpha locals negotiated concerning the Plan.
14. In 1955, the "safety and welfare" section of the collective bargaining agreements (CBA) between Alpha and its locals stated that the "Group Insurance Program currently in effect shall continue in effect for the period" of the CBA. Each collective bargaining agreement stated its term began when both parties signed it, continued until a date specified (being one year later), "and each year thereafter unless sixty (60) days' notice is given in writing by either party prior to any expiration date."
The "safety and welfare" section of the CBAs for 1956, 1957, and 1958 provided that the "Group Insurance plan agreed upon at the time of signing this agreement shall continue in effect for the period" of each CBA. Each CBA had the same "term of agreement" provision as the 1955 CBAs.
15. The booklet for the Plan revised as of May 1, 1956,
(a) set forth explicit eligibility provisions for "employees," "new employees," "regular employees," and "dependents," 1956 Plan Booklet at 4;
(b) contained a statement that the "increased Benefits became effective on the effective date of your 1956 union contract;"
(c) stated that:
The Alpha Company hopes to continue the Plan indefinitely but reserves the right to change, modify, or discontinue it if future conditions make such action necessary or if reduction of Alpha Company earnings make it impossible to continue, except where continuance is specified by union contract.
id.;
(d) provided the opportunity for qualified employees who retire to "continue $2000 of their Group Life Insurance for which they were insured immediately prior to retirement" if the employee's contribution to the coverage continued, id. at 7; and
(e) stated that qualified employees who retire "will have the privilege of continuing their Hospitalization and Surgical Insurance for themselves and dependents" to specified limits, id. at 12. The 1956 Plan booklet also stated certificates evidencing the insurance would be issued to each employee; Alpha and the covered employees contributed to the Plan; and that any questions would be resolved only upon the terms and provisions of the insurance contracts between Alpha and Equitable. Id. at 2, 3, 5, 22.
16. In the "safety and welfare" section of the CBAs effective from 1959 until 1963, there were provisions stating that "the Group Insurance Plan currently in effect shall be amended" by certain specified provisions. These provisions contained no specific reference to retirement benefits. Unlike the earlier CBAs, these CBAs did not say the Plan then in effect "continued" and did not otherwise state there was a fixed duration to any insurance plan deemed to be in effect. The record does not reflect that benefits under the Plan were not disbursed or received between 1959 and 1963. The CBAs between Alpha and its locals for this time period contained the same type of "term of agreement" provision set forth in the earlier CBAs, although the term was for more than one year.
17. In 1959, a booklet regarding "The Alpha Major Medical Expense Insurance Plan" was issued for this new plan, supplementing the hospital and surgical benefits. This insurance plan booklet stated the Plan's benefits (including a "maximum lifetime benefit for any individual [of] $5,000 for expenses incurred for the same or related causes,") "ceases on termination of your *1113 active employment with Alpha." Id. at 4. This booklet expressly stated that decisions on legal interpretation would be "based upon the terms of the Group Insurance contracts between [Equitable and Alpha], which contracts may be altered or discontinued."
18. As revised for August 1, 1961, the Plan booklet provided as follows:
Retirement
Upon your retirement with the consent of the company, you may continue:
1. $2,000 of your group life insurance, if you have completed 15 years of continuous service at the time of retirement, at a monthly cost of $1.00.
2. Hospital expense and surgical expense insurances on yourself and your dependents. However, in a calendar year, hospital room and board benefits will be limited to a maximum of $13 per day for a total of 60 days and reimbursement for additional charges will be limited to $300. Surgical expense benefits may not exceed $250 in a calendar year. These benefits apply to each insured member of a family separately. Any number of confinements or operations may make up these maximums. Your monthly cost for these hospital expense and surgical expense insurances is:
$.80 for you, or
2.24 for you and your wife, or
2.90 for you, your wife and your children.
1961 Plan Booklet at 14-15. The booklet noted that Alpha paid the full cost of the employees' insurance and most of the dependents' insurance; stated that a certificate containing "complete details of the benefits provided under this plan" would be issued; and stated the "[g]roup insurance for you and your dependents terminates upon termination of your active service except as previously discussed." Id. at 1, 13, 15. In its introduction, the booklet also stated "[t]he exact provisions of the plan are contained in the contracts between" Equitable and Alpha.
19. The "safety and welfare" section of the CBAs between Alpha and its union's locals for the period from 1963 until mid-1965 stated that "the Group Insurance Plan currently in effect" would be amended as specified. The noted changes explicitly included enhanced coverage for future retired employees. As with the 1959 through 1963 CBAs, the 1963-1965 CBAs did not say the Plan then in effect "continued," and did not otherwise state there was a fixed duration to any insurance plan deemed to be in effect. The record does not reflect that benefits under the Plan were not disbursed or received between 1963 and 1965. The CBAs for this period also contained the same type of "term of agreement" provision set forth in the CBAs effective from 1959-1961 and 1961-1963.
20. In the booklet for the Plan revised as of August 1, 1963, the only provision expressly related to retired employee benefits stated:
Upon your retirement with the consent of the company, you may continue:
1. $2,000 of your group life insurance, if you have completed 15 years of continuous service at the time of retirement, at a monthly cost of $1.00.
2. Hospital expense, surgical expense and major medical expense insurances on yourself and your dependents. However, in a calendar year, hospital room and board benefits will be limited to a maximum of $18 per day for a total of 70 days and reimbursement for additional charges will be limited to $360. Surgical expense benefits may not exceed $300 in a calendar year. Major medical expense benefits will be limited to a lifetime maximum of $2500 for all causes. These benefits apply to each insured member of a family separately. All other provisions will continue to apply. Your monthly cost for these expense insurances is:
$.80 for you, or
2.24 for you and your wife, or
2.90 for you, your wife and your children.
Booklet for August 1, 1963, Plan at 14-15.
21. With respect to hospital, medical, and surgical coverage, the local unions' *1114 proposals submitted to Alpha for negotiation in 1965 had suggested "[t]he same hospital, medical and surgical coverage for retired employee and his dependents as is carried by the active employees. This coverage to continue on the spouse and dependents after the retiree's death."
In the CBAs effective from 1965 through 1967, the "safety and welfare" section explicitly provided "[t]he Group Insurance Plan currently in effect will remain in effect until May 1, 1966 and then will be amended as provided in Appendix `A' attached." In relevant part, Appendix A stated:
I. Future retirees' life insurance, increased from $2,000 to $2,500. For future retirees, Company will pay full costs of all group insurance for them and their dependents until death of retiree.
* * * * * *
M. Hospital, Medical and Surgical benefits for future retirees and their dependents shall be increased by the following.
1. Hospital room charges up to semiprivate rate for 120 days; $700 extras; $350 surgical schedule. These benefits to be on a calendar year basis.
2. The present 15 years of continuous service eligibility requirement for retiree insurance coverage reduced to 10 years of continuous service.
No Plan booklet was issued to reflect these changes.
Union negotiators who testified stated that after the 1965-67 CBAs were adopted by Alpha and its union's locals, the union representatives informed their locals or understood from Alpha's representatives that insurance benefits continued for life. Alpha's negotiating representative understood the phrase "until death" in Appendix A of the 1965-67 CBA to mean the benefits would not be paid to dependents after the retiree's death.
22. In 1966, Alpha and its union's locals entered into "memorand[a] of understanding regarding group insurance medicare." In relevant part, these memoranda provided as follows for the coordination of benefits granted through the Plan and through Medicare:
In the event that an employee, retiree or a dependent thereof, is eligible for benefits under any Federal Program of Hospital, Medical and Surgical care for the aged, the Hospital, Medical and Surgical Benefits under the plan provided by the company shall be payable only to the extent that such benefits under the plan exceed those provided under the Federal Program and there shall be no duplication of benefits.[3]
23. Beginning in 1967, Alpha and the union entered into a "Basic Agreement" as the CBA, with "Local [Supplemental] Agreements" amending the Basic Agreement as necessary based upon conditions at the local plant. The preamble to the Basic Agreement for 1967 to 1969 explicitly stated: "[i]n the event of the sale or lease by the Company of a plant covered by this agreement or in the event the Company is taken over by sale, lease assignment, receivership or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of this agreement for the life thereof." This provision was not in the preamble for the Basic Agreements covering 1969-1971, 1971-1973, 1973-1975, and 1975-1978.
24. The "safety and welfare" section of the 1967-1969 Basic Agreement stated in pertinent part that "[t]he group insurance plan currently in effect will remain in effect until May 1, 1968 and then will be amended as provided in Appendix `B' attached." Appendix B did not contain any changes expressly related to benefits for retired employees. The section also set forth amendments in the Plan effective May 1, 1967, including a provision that "[a]ny group insurance coverage to retirees shall be continued to employees who retire" at the lower age of 55 as allowed by *1115 amendment to the pension plan. This Basic Agreement stated it
shall become effective May 1, 1967, except as otherwise noted, and shall continue in effect until May 1, 1969, and each year thereafter unless sixty (60) days' notice is given in writing by either party prior to any expiration date.
25. With respect to retirement life insurance and health benefits, the booklet for the Plan as revised for May 1, 1968, provided as follows:
Upon your retirement with the consent of the company, you may continue:
1. $2,500 of your group life insurance, if you have completed 10 years of continuous service at the time of retirement.
2. Hospital expense, surgical expense and major medical expense insurances on yourself and your dependents. However, in a calendar year, hospital room and board benefits will be limited to the hospital's regular charge for semi-private accommodations for a total of 120 days and reimbursement for additional charges will be limited to $700. Surgical expense benefits may not exceed $375 in a calendar year. Major medical expense benefits will be limited to a lifetime maximum of $2,500 for all causes. These benefits apply to each insured member of a family separately. All other provisions will continue to apply.
Special Note: If Alpha is reimbursing an individual for Medicare's Medical Insurance, the expense insurances described above will be coordinated with the Medicare Benefits so that there shall be no duplication of benefits.
Booklet for May 1, 1968, Plan at 14-15.
26. In 1969, the union submitted for consideration and negotiation a proposed insurance agreement that included, in relevant part, provisions for life insurance benefits to retired employees, and stated: "in the event of death of the insured from any cause, at any place, and at any time," ... "[u]pon the death of the Retiree, coverage for his Dependents under the Program shall be continued as though such Retiree was living;" and
The benefits of the Prior Program for Employees, Retirees, and Dependents thereof, shall be applicable for any occurrence for which benefits were provided under the Prior Program prior to the Effective Date of the Program subject to all the provisions applicable to the Prior Program. Any insurance which as of the date immediately preceding the Effective Date of the Program is being continued during a layoff, leave of absence, illness, injury, disability, or retirement, in accordance with the Prior Program shall be adjusted on the Effective Date to reflect the benefits and coverages of the Program.
* * * * * *
This Insurance Agreement shall become effective ____, 1969, and shall continue in effect until ____, 1971, during which period neither the Company nor the Union may demand any change in its provisions. After ___, 1971, the Insurance Agreement shall be automatically renewed for successive one-year periods unless either party to the Agreement has given written notice to the other at least sixty (60) days prior to ____, 1971 (or any subsequent anniversary of the Effective Date of the Agreement) of its desire to amend or modify this agreement.
See union-proposed 1969 Insurance Agreement at 1, 3, 9, 11.
27. The "safety and welfare" section of the Basic Agreement for 1969-1971 stated "[t]he group insurance plan in effect until May 1, 1969, will be amended as provided in Appendix `A-69' attached." The Appendix set forth the following amendments related to benefits for retired employees:
Life Insurance for employees retired after May 1, 1969, shall be increased from $2,500 to $3,000.
* * * * * *
Life Insurance for employees retired after May 1, 1970, shall be increased from $3,000 to $3,500.
* * * * * *

*1116 The Dental Expense Insurance of any employee shall cease automatically upon the occurrence of ... the employee's retirement.
There was no provision in the Basic Agreement stating that the Plan in effect would be "continued." The record does not reflect that benefits were not disbursed or received between 1969 and 1971. This Basic Agreement contained the same "term of agreement" provision as the 1967-1969 Basic Agreement, except this Basic Agreement was effective from May 1, 1969, until May 1, 1971.
28. The booklet for the Plan as revised May 1, 1969, set forth the following provision regarding benefits for retirees:
Upon your retirement with the consent of the company, you may continue:
1. $3,000 ($3,500 if you retire after May 1, 1970) of your group life insurance, if you have completed 10 years of continuous service at the time of retirement.
2. Hospital expense, surgical expense and major medical expense insurances on yourself and your dependents. However, in a calendar year, hospital benefits will be limited to the hospital's regular charge for semi-private care for a total of 120 days. Surgical expense benefits may not exceed $450 in a calendar year. Major medical expense benefits will be limited to a lifetime maximum of $2,500 for all causes. These benefits apply to each insured member of a family separately. All other provisions will continue to apply.
Special Note: If Alpha is reimbursing an individual for Medicare's Medical Insurance, the expense insurances described above will be coordinated with the Medicare Benefits so that there shall be no duplication of benefits.
Booklet for May 1, 1969, plan at 24-25. This was the only provision in this booklet mentioning retirement benefits.
29. In 1971, the union again submitted for consideration a proposed "Insurance and Health Agreement." The proposed agreement contained the following relevant provisions:
Commencing on and after the Effective Date, the Company will provide for all Bargaining Unit Employees (hereinafter referred to as "Employees" or "Employee") and their Dependents and all Retirees and their Dependents the Group Insurance Program set out herein. Insurance coverages under the Prior Program not hereinafter provided shall be continued to the extent applicable to Employees and their Dependents and Retirees and their Dependents in accordance with the provisions of the Prior Program as if fully set out herein and as the same may now or hereafter be amended, modified or supplemented in collective bargaining between the parties.
The benefits of the Prior Program for Employees, Retirees, and Dependents thereof, shall be applicable for any occurrence for which benefits were provided under the Prior Program prior to the Effective Date of the Program subject to all the provisions applicable to the Prior Program. Any insurance which as of the date immediately preceding the Effective Date of the Program is being continued during a layoff, leave of absence, illness, injury, disability, or retirement, in accordance with the Prior Program shall be adjusted on the Effective Date to reflect the benefits and coverages of the Program.
* * * * * *
Life Insurance coverage for each Retiree, including disability retirees age 60 or more who have not elected either Option (2) or Option (3) under Section 2(a) of this Article, and each Employee who becomes totally and permanently disabled (as defined in the Pension Plan) after he attains age 60, shall be in the amount of $10,000 payable in one sum to the beneficiary in the event of death of the insured from any cause, at any place, and at any time.
* * * * * *
Upon the death of a Covered Family Member [defined as an employee, retiree, *1117 or dependents thereof], coverage for his Dependents under the Program shall be continued as though such Covered Family Member was living.
* * * * * *
This Insurance and Health Agreement shall be effective from ____, 19__, to ____, 19__. In the event either party desires to amend, modify or terminate the Agreement such party may give appropriate notice sixty (60) days before the natural expiration date. In the event no such notice is given, the contract shall continue until such time as a sixty (60) day advance notice is given of a desire to amend, modify or terminate. If the action by either party desiring to alter the contract is to amend or modify the contract then all other provisions shall continue in full force and effect, except that the Union shall be permitted to strike in support of its proposed amendments or modifications and the employer, to the extent permitted by law, shall be permitted to lock out in support of its amendments or modifications, the provisions of any other contract between the parties to the contrary notwithstanding.
Union's proposed 1971 insurance agreement at 1, 3, 10, 13.
30. The Report of the Contract Negotiations between Alpha and the union for April 26, 1971, through April 30, 1971, states with respect to Alpha's closed plant at Ironton, that the Ironton group "have already received Medicare premiums and they are still in effect in the future." 1971 Report at 7.
31. The "safety and welfare" section of the Basic Agreement for 1971-1973 provided that "[t]he group insurance plan in effect until May 1, 1971, will be amended as provided in Appendix `A-71' attached." The only provisions of that appendix explicitly directed to retirees stated:
The Company will continue to reimburse the cost of Medicare premiums, including any subsequent increase in premiums, for those eligible, active or retired including their spouses as long as the Medicare benefits are coordinated with the Company group insurance plan.
* * * * * *
An employee who is eligible to retire under the terms of the disability retirement pension shall not be required to retire until he has exhausted his weekly accident and sickness disability benefits (52 weeks).
There was no provision stating that the Plan then existing would "continue." The record does not reflect that benefits were not disbursed or received between 1971 and 1973. The Basic Agreement further provided that upon ratification by the union's locals, the agreement would
... become effective and remain in full force and effect and be binding upon the parties hereto from May 1, 1971 to and including April 30, 1973, and it shall continue in full force and effect thereafter from year to year until either party on or before March 1, of any year, beginning March 1, 1973, gives written notice to the other party of its desire or intention either to alter or modify or to terminate the same. If such notice is given, the parties hereto shall begin negotiations not later than March 31 in such year and this Agreement shall continue in full force and effect until completion and signing of a new agreement, provided, however, that after such negotiations have continued without reaching an Agreement until May 1 in any year, then either party may terminate this Agreement, at any time thereafter upon notice.
32. In the May 1, 1971, Plan booklet the "purpose" section explicitly stated that the "benefits and provisions of the group insurance plan in effect prior to the [listed] dates shall continue. This booklet explains the plan on and after the [listed] dates." Booklet for May 1, 1971, Plan at 3. For retirement benefits, the 1971 Plan booklet explained:
Upon your retirement with the consent of the company, on or after May 1, 1971, you may continue:

*1118 1. $4,000 of your group life insurance, if you have completed 10 years of continuous service at the time of retirement.
2. Hospital expense, surgical expense and major medical expense insurances on yourself and your dependents. However, in a calendar year, hospital benefits will be limited to the hospital's regular charge for semi-private care for a total of 120 days. Surgical expense benefits may not exceed $495 in a calendar year. Major medical expense benefits will be limited to a lifetime maximum of $3,000 for all causes. These benefits apply to each insured member of a family separately. All other provisions will continue to apply.
Special Note: If Alpha is reimbursing an individual for Medicare's Medical Insurance, the expense insurances described above will be coordinated with the Medicare Benefits so that there shall be no duplication of benefits.
The Company will continue to reimburse the cost of these Medicare premiums, including any subsequent increase in premiums, for those eligible, active or retired including their spouses as long as the Medicare benefits are coordinated with the Company group insurance plan.
Booklet for 1971 Plan at 24-25.
33. The Plan booklets for 1963, 1968, 1969, and 1971 stated (a) the entire cost of the Plan was paid by Alpha; (b) "[t]he group insurance contract is between [Alpha and Equitable]. In accordance with this contract a certificate will be issued to you. This certificate contains complete details of the benefits provided under this plan;" and (c) "[g]roup insurance for you and your dependents terminates upon termination of your active service[,]" except as discussed within the booklet. 1963 Plan Booklet at 1, 13, 15; 1968 Plan Booklet at 1, 14, 15; 1969 Plan Booklet at 3, 23, 25; 1971 Plan Booklet at 3, 23, 25.
34. The Plan booklets issued in 1956, 1961, 1963, 1968, 1969, and 1971 stated that Equitable would determine the amount covered for cutting operations not listed in the Plan. 1956 Plan Booklet at 10; 1961 Plan Booklet at 7; 1963 Plan Booklet at 7; 1968 Plan Booklet at 7; 1969 Plan Booklet at 9; 1971 Plan Booklet at 9.
35. Beginning in 1973, the collective bargaining agreements (CBA) negotiated by Alpha and the union contained as an appendix a separate Insurance and Health Agreement (Agreement) that contained the terms of the Plan. Copies of the Agreement were distributed to all employees in pocket-sized benefit booklets. Each Agreement was prepared by the Personnel Manager of Alpha's cement division, Robert J. Bonstein, and sent to the union for review and approval before it became effective. The Agreement was based on the proposed insurance agreements previously submitted by the union, as drafted by Thomas Miechur, the international union's president. Mr. Miechur (by deposition) and Mr. Bonstein testified that they understood retiree welfare benefits were not guaranteed beyond the term of the Agreement and could terminate upon the Agreement's expiration. The 1973, 1975, and 1978 Agreements do not specifically mention Equitable.
36. The 1973 CBA stated that "[t]he group insurance plan in effect until April 30, 1973, will be amended as provided in Appendix `A-73' attached." That Appendix was the Insurance and Health Agreement for 1973. The 1973-1975 CBA provided as its "term of agreement:"
After ratification by the members of the Local Unions this Agreement shall become effective and remain in full force and effect and be binding upon the parties hereto from May 1, 1973 to and including April 30, 1975, and it shall continue in full force and effect thereafter from year to year until either party on or before March 1, of any year, beginning March 1, 1975, gives written notice to the other party of its desire or intention either to alter or modify or to terminate the same. If such notice is given, the parties hereto shall begin negotiations not later than March 31 in such year and this Agreement shall continue in full force and effect until completion and *1119 signing of a new agreement, provided, however, that after such negotiations have continued without reaching an Agreement until May 1 in any year, then either party may terminate this Agreement, at any time thereafter upon notice.
37. The terms of the 1973 Agreement explicitly referred to retirement benefits in numerous sections:
Commencing on and after the Effective Date, except as stated otherwise, the Company will provide for ... all Retirees, retired on or after the Effective Date, and their Dependents the Group Insurance Program set out herein. Insurance coverages under the Prior Programs not hereinafter provided shall be continued to the extent applicable to Retirees and their Dependents in accordance with the provisions of the Prior Programs as if fully set out herein and as the same may now or hereinafter be amended, modified or supplemented in collective bargaining between the parties.
The benefits of the Prior Program for Employees, Retirees and Dependents thereof, shall be applicable for any occurrence for which benefits were provided under the Prior Program prior to the Effective Date of the Program subject to all the provisions applicable to the Prior Program....
* * * * * *
The Company shall pay all premium costs to finance the Program. No Employee, Retiree, retired on or after the Effective Date, or any Dependent thereof, shall be required to make any contributions or premium payments to the Program.
* * * * * *
[With respect to coordination of benefits, if] a retiree is insured under his present employer's plan, his present employer's plan pays first....
* * * * * *
Life insurance coverage for each Retiree, including disability retirees who have completed 10 or more years of continuous service at the time of retirement and are retired on or after the Effective Date, shall be in the amount of $4,000 payable in one sum to the beneficiary in the event of death of the insured from any cause, at any place, at any time, while insured.
Life Insurance coverage for each Retiree, including disability retirees, retired before the Effective Date, shall continue in the same amount for which he was insured prior to the Effective Date.
* * * * * *
[For Basic Hospital-Surgical-Medical Benefits,] [i]f a female Employee or the wife of a male Employee or Retiree becomes confined in a hospital on account of a pregnancy, the benefit payable for such person shall be in an amount equal to the reasonable and customary charges for which coverage is provided in the preceding paragraphs ... of this Section subject to an overall maximum of $242.00. The overall maximum of $242.00 does not apply on and after May 1, 1974.
* * * * * *
Basic hospital and surgical benefits will be continued on Retirees who have completed 10 or more years of continuous service at the time of retirement, and their Dependents. However in a calendar year, hospital benefits will be limited to 120 days and surgical benefits will be limited to a maximum of $495 in accordance with schedule # 1 attached.
The benefits described in Sections (1) and (2) of this Article VI, which become effective on May 1, 1974, will be continued on Retirees:
(1) retired on and after May 1, 1974 and
(2) who have completed 10 or more years of continuous service.
and their Dependents.
* * * * * *
Major Medical Expense coverage for Retirees and their dependents including disability retirees, who have 10 or more years of continuous service at the time of *1120 retirement and are retired on or after May 1, 1974, shall be in the amount of $5,000. Major Medical coverage for those retired prior to the Effective Date shall continue in the same amount for which they were insured prior to the Effective Date. There shall be no reinstatement after retirement.
1973 Agreement at 1, 2, 3, 5, 10, 24, and 29. The Agreement also stated that accidental death and dismemberment insurance; sickness and accident (weekly indemnity) benefits; basic diagnostic benefits; and dental care benefits, terminated upon retirement. Id. at 7, 8, 25, 33. Furthermore, the 1973 Agreement expressly stated:
This Insurance Agreement shall become effective May 1, 1973, and shall continue in effect until May 1, 1975, during which period neither the Company nor the Union may demand any change in its provisions.
After May 1, 1975, the Insurance Agreement shall be automatically renewed for successive one-year periods unless either party to the Agreement has given written notice to the other at least sixty (60) days prior to May 1, 1975 (or any subsequent anniversary of the Effective Date of the Collective Bargaining Agreement) of its desire to amend or modify this Agreement.
Id. at 40-41.
38. The 1975-1978 CBA stated that "[t]he group insurance plan in effect until April 30, 1975 will be amended as provided in Appendix `A-75' attached." That appendix contained the Insurance and Health Agreement as amended May 1, 1975. The 1975-1978 CBA contained the same "term of agreement" provision as the 1973-1975 CBA, except that the period ran from May 1, 1975, to April 30, 1978, rather than from 1973 to 1975.
39. The terms of the 1975 Agreement explicitly referred to retirement benefits in several sections:
Commencing on and after the Effective Date, except as stated otherwise, the Company will provide for all ... Retirees, retired on or after the Effective Date, and their Dependents the Group Insurance Program set out herein. Insurance coverages under the Prior Programs not hereinafter provided shall be continued to the extent applicable to Retirees and their Dependents in accordance with the provisions of the Prior Programs as if fully set out herein and as the same may now or hereinafter be amended, modified or supplemented in collective bargaining between the parties.
The benefits of the Prior Program for Employees, Retirees and Dependents thereof, shall be applicable for any occurrence for which benefits were provided under the Prior Program prior to the Effective Date of the Program subject to all the provisions applicable to the Prior Program....
* * * * * *
... No employee, Retiree, retired on or after the Effective Date, or any Dependent thereof, shall be required to make any contributions or premium payments to the Program.
* * * * * *
[With respect to coordination of benefits,] [i]f a retiree is insured under his present employer's plan, his present employer's plan pays first.
* * * * * *
Life insurance coverage for each Retiree, including disability retirees who have completed 10 or more years of continuous service at the time of retirement and are retired on or after the Effective Date, shall be in the amount of $4000 payable in one sum to the beneficiary in the event of death of the insured from any cause, at any place, at any time, while insured. Life insurance coverage for each Retiree, including disability retirees, retired before the Effective Date, shall continue in the same amount for which he was insured prior to the Effective Date.
An Employee shall have the same rights and benefits with respect to any portion of his Life Insurance terminated *1121 due to retirement on pension as though such portion had terminated due to termination of employment.
* * * * * *
Basic hospital and surgical benefits described in Sections 1. and 2.(a) of this Article VI, will be continued on Retirees, who have completed 10 or more years of continuous service at the time of retirement, and their Dependents.
The benefits described in Sections 1. and 2.(b) of this Article VI, which become effective on May 1, 1976, will be continued on Retirees:
(1) retired on and after May 1, 1976 and
(2) who have completed 10 or more years of continuous service.
and their Dependents.
* * * * * *
Major Medical Expense Benefits for Retirees and their dependents including disability retirees, who have 10 or more years of continuous service at the time of retirement shall be in the amount of $5,000. Major Medical coverage for those retired prior to the Effective Date shall continue in the same amount for which they were insured prior to the Effective Date. There shall be no reinstatement after retirement.
Employees retiring on or after May 1, 1976 and their Dependents will have their Major Medical Expense Benefits continued as described in Section 8.(a) above and will be eligible for the ninety percent reimbursement feature effective on such date.
1975 Agreement at 3, 4, 5, 8-9, 24, 29. That Agreement further stated that accidental death and dismemberment insurance; sickness and accident (weekly indemnity) benefits; basic diagnostic benefits; and dental expense benefits, terminated upon retirement. Id. at 10, 12, 25, 34.
With respect to its term, the 1975 Agreement provided that:
This Insurance Agreement shall become effective May 1, 1975, and shall continue in effect until May 1, 1978, during which period neither the Company nor the Union may demand any change in its provisions.
After May 1, 1978, the Insurance Agreement shall be automatically renewed for successive one-year periods unless either party to the Agreement has given written notice to the other at least sixty (60) days prior to May 1, 1978 (or any subsequent anniversary of the Effective Date of the Basic Agreement) of its desire to amend or modify this Agreement.
Id. at 46.
40. The 1978-1981 CBA stated that "[t]he group insurance plan in effect until April 30, 1978 will be amended as provided in Appendix `A-78' attached." That appendix contained the Insurance and Health Agreement as amended May 1, 1978. The 1978-1981 CBA contained the same "term of agreement" provision as the 1973-1975 and 1975-1978 CBAs, except that the relevant time period ran from May 1, 1978, to April 30, 1981.
41. The provisions of the 1978 Agreement included retired employees as follows:
Commencing on and after the Effective Date, except as stated otherwise, the Company will provide for ... all Retirees, retired on or after the Effective Date, and their Dependents the Group Insurance Program set out herein. Insurance coverages under the Prior Programs not hereinafter provided shall be continued to the extent applicable to Retirees and their Dependents in accordance with the provisions of the Prior Programs as if fully set out herein and as the same may now or hereinafter be amended, modified or supplemented in collective bargaining between the parties.
The benefits of the Prior Program for Employees, Retirees and Dependents thereof, shall be applicable for any occurrence for which benefits were provided under the Prior Program prior to the Effective Date of the Program subject to *1122 all the provisions applicable to the Prior Program....
* * * * * *
... No Employee, Retiree, retired on or after the Effective Date, or any Dependent thereof, shall be required to make any contributions or premium payments to the Program.
* * * * * *
[With respect to coordination of benefits,] [i]f a Retiree is insured under his present employer's plan, his present employer's plan pays first....
* * * * * *
Life insurance coverage for each Retiree, including disability retirees who have completed 10 or more years of continuous service at the time of retirement and are retired on or after the Effective Date, shall be in the amount of $4000 payable in one sum to the beneficiary in the event of death of the insured from any cause, at any place, at any time, while insured. Life insurance coverage for each Retiree, including disability retirees, retired before the Effective Date, shall continue in the same amount for which he was insured prior to the Effective Date.
An Employee shall have the same rights and benefits with respect to any portion of his Life Insurance terminated due to retirement on pension as though such portion had terminated due to termination of employment.
* * * * * *
Basic Hospital and Surgical Benefits described in Sections 1 and 2 of this Article VI, will be continued on Retirees and their dependents including disability retirees:
(1) retired on and after May 1, 1976 and
(2) who have completed 10 or more years of continous service.
* * * * * *
Major Medical Expense Benefits for Retirees and their dependents including disability retirees:
(1) retired on and after May 1, 1976 and
(2) who have completed 10 or more years of continuous service shall be in the amount of $5,000. Major Medical coverage for those retired prior to the Effective Date shall continue in the same amount for which they were insured prior to the Effective Date. There shall be no reinstatement after retirement.
1978 Agreement at 3, 4, 5, 8-9, 16, 21-22. The 1978 Agreement further stated that accidental death and dismemberment insurance; sickness and accident (weekly indemnity) benefits; basic diagnostic benefits; and dental expense benefits, terminated upon retirement. Id. at 11, 12, 17, and 26. With respect to its term, the 1978 Agreement provided that:
This Insurance Agreement shall become effective May 1, 1978, and shall continue in effect until May 1, 1981, during which period neither the Company nor the Union may demand any change in its provisions.
After May 1, 1981, the Insurance Agreement shall be automatically renewed for successive one-year periods unless either party to the Agreement has given written notice to the other at least sixty (60) days prior to May 1, 1981 (or any subsequent anniversary of the Effective Date of the Basic Agreement) of its desire to amend or modify this Agreement.
Id. at 39.
42. The 1973, 1975, and 1978 Agreements defined "Retiree" as "any person who is receiving a pension or disability benefit under the terms and provisions of the Pension Plan." 1973 Agreement at 40; 1975 Agreement at 46; 1978 Agreement at 39.
43. The 1975 and 1978 Agreements also contained an article captioned "Prior Program Benefits." Article XI, 1975 Agreement at 35-38; Article XII, 1978 Agreement at 28-31. In particular, Section 1 of the Articles specified that "[t]he benefits continued on Retirees (and their dependents, *1123 as applicable) who retired prior to May 1, 1975 [or 1978] are those which were in effect at the time the individual retired[.]" 1975 Agreement at 35; 1978 Agreement at 28. Section 2 of the Articles itemizes all such prior benefits by listing the type of benefit, the amount of coverage, the effective dates of each such coverage, and the relevant amount of employment service required for a retiree to qualify for such coverage. 1975 Agreement at 35-38; 1978 Agreement at 28-31. Section 3 of the Articles stated that sickness and accident (weekly indemnity) benefits, medical benefits, and basic diagnostic benefits and dental expense benefits are not continued after retirement. 1975 Agreement at 38; 1978 Agreement at 31.
44. In 1978, Alpha provided hourly employees with a "redbook," containing in relevant part the summary plan description (SPD) for the Plan. With respect to retirement, the Plan's SPD provisions stated:
[that] [t]he Plan as described in this summary applies to those actively employed or who retire on or after May 1, 1978.
* * * * * *
Converting Your Coverage  When you terminate or retire from the Company, you have 31 days during which you may convert your Company-sponsored life insurance to an individual policy. You will be able to make the conversion without a medical review. Your individual coverage can be for any amount from $500 up to the amount of coverage you had before you terminated.
Retirement Coverage  If you leave the Company due to retirement and have 10 or more years of service you will continue to receive $4,000 in Company-sponsored life insurance.
* * * * * *
Retirement  If you retire with 10 or more years of service on or after May 1, 1976, you will continue to receive the Hospital/Surgical and Major Medical portion of plan coverage. Coverage will continue for the remainder of your life. However, the Major Medical lifetime maximum for retirees and their dependents is $5,000. This maximum CANNOT be reinstated. All other health expense coverages stop at retirement.
* * * * * *
Plan Sponsor  ... All contributions to the Plan are made by Alpha and its retired hourly employees.
* * * * * *
Other Summaries  The insurance and health benefits applicable to retirees who retired prior to May 1, 1976, are described in other Summary Plan Descriptions.
1978 SPD at i, 2, 12, 15, 17.
45. During 1980 and 1981, Alpha's cement division had a multi-million dollar operating loss and multi-million dollars worth of trade payables. Additionally, during recent years, Alpha had not complied with covenants in its loan agreements. Alpha unsuccessfully tried to sell its cement assets and the Slattery subsidiary to help offset the apparent financial crisis. In early 1981, Alpha shut down or sold four of its remaining cement plants.
46. In 1981, by agreement of Alpha and the union, the terms of the 1978 Plan were extended through April 30, 1982.
47. In the fall of 1981, Alpha sought to terminate retiree benefits by an agreement with the union to amend the then-effective 1978 Plan and CBA prior to their expiration dates. In February 1982, there were meetings with union locals at Alpha's two remaining cement plants to discuss such an amendment. One local voted to reject the proposed amendment.
48. At meetings with locals at closing plants, Neil Werkheiser, manager of industrial relations, informed union representatives there was little likelihood the insurance benefits would continue due to the financial problems, and that retirees may want to form common groups with which to obtain insurance.
49. On March 29, 1982, Alpha sent a letter to all Alpha hourly retirees notifying them that Alpha was cancelling their insurance coverage effective May 1, 1982. Enclosed *1124 with each letter was a conversion form to be used in the event anyone desired to convert the health coverage to an individual policy with Equitable.
50. In response to retirees' inquiries, Thomas Miechur sent letters stating in relevant part:
The termination of the retirees' insurance coverage by the company is a traumatic experience for all retirees. I fully understand the impact the termination of insurance benefits has on retirees, and I wish there was something that could be done to provide continued coverage, but under the circumstances there is nothing that the Union can do. There is nothing in the collective bargaining agreement itself, or in the Insurance and Health Agreement which guarantees retirees' benefits for life, nor is there any language in these agreements that talks about vesting of these benefits, and these benefits will expire of their own force on May 1, 1982.
Pensions, unlike health and welfare benefits, are paid from an actuarially predetermined fund and are guaranteed for life. Health and welfare benefits are negotiated periodically and are paid for by the employer contributions and last only for the life of a collective bargaining agreement.
51. On or about May 1, 1982, Alpha ceased providing, under the Plan or otherwise, life insurance or health benefits to retirees and their covered family members for any period from and after May 1, 1982.
52. On April 30, 1982, the Plan and CBA then in effect expired.
53. On May 28, 1982, Alpha, the international, and the local at Lime Kiln executed a Memorandum of Agreement which expressly stated that the terms of the 1978 Basic Agreement, "excluding insurance coverage for all retirees," would be continued.
54. During strikes in 1957 and 1965, insurance coverage continued for retired employees.
55. During "hiatus" periods, when one contract expired and Alpha and the union had not yet entered into a new contract, Alpha continued to provide insurance benefits under the terms of the expired contract, purportedly based on agreements that the expired contract's terms would continue in force.
56. In recent years, including late 1981, Alpha sent retirees a letter describing benefits, and stating in relevant part:
Your life insurance will be continued in the amount of $4,000. The balance of your life insurance will be continued until 31 days from your retirement date. Until then, you may convert it to an individual policy without the necessity of a physical examination. Application may be made by completing the enclosed Notice of Conversion Privilege form. Alpha group hospital and surgical insurances for you and your eligible dependents will be continued. Hospitalization benefits will be limited to the hospital's regular charge for semi-private care for a total of 365 days. Surgical benefits will be paid on a regular and customary basis. Major medical expense benefits will be provided up to a lifetime maximum of $5,000. These maximums apply to you and your eligible dependents separately. Our plan does not permit continuance of weekly indemnity, basic diagnostic expense and dental expense benefits. When an individual attains age 65 (in some cases sooner where a disabled individual is entitled to monthly cash benefits under the Social Security Program), he (or she) is eligible for Social Security's Medicare Program. The hospital, surgical and major medical benefits described above will be reduced by any benefits payable by Medicare. We strongly urge that you subscribe to the voluntary portion of Medicare; that is the part that costs $11.00 per month. This part of Medicare is also used as an offset against the Alpha benefits. Therefore, it is important that you and your spouse subscribe for the full Medicare Program when eligible. Alpha will reimburse you for the $11.00 cost, upon receipt of a *1125 copy of your Medicare card. Reimbursement will be included in your pension check.
57. There was conflicting testimony regarding whether or not Alpha's representatives orally told employees that their insurance benefits continued "for life" or "until death" of the employees. Union members, including those involved in negotiating the 1975 and 1978 Agreements, testified that a now-deceased company representative made such statements. The details of the circumstances of such statements or conversations were not recalled by the witnesses. Company representatives testified they had not personally made or heard such statements.
58. Mr. John Hickey, an employees benefit consultant for Kwasha Lipton (the company that prepared the 1978 SPD for Alpha), testified as an expert witness for Alpha and the Plan. Mr. Hickey noted it was not a customary practice in the industry either to put aside money for future retiree claims under health and welfare benefit plans or to recognize future claims as a liability on corporate books. Mr. Hickey also acknowledged that after 1975, the effective date of ERISA, it was customary practice to state explicitly in the relevant documents that retiree benefits were payable beyond the term of a collective bargaining agreement, where such payments were intended. Mr. Hickey further noted that during the late 1970s, it would have been a good practice to state expressly how plant closings, etc., might affect retiree health and life insurance benefits, but such was not the industry practice. During cross-examination, Mr. Hickey acknowledged he would have drafted the 1978 SPD differently.
59. In 1974, Alpha became self-insured with respect to benefits for Medical and health care.
60. As amended, the 1978 Plan provided life insurance, accidental death and dismemberment insurance, and sickness and accident insurance benefits through group insurance policies issued to Alpha by Equitable. Hospital, surgical, medical, basic diagnostic, major medical and dental benefits were provided through an Administration Agreement between Alpha and Equitable. Equitable's involvement with Alpha's group health insurance was that of an agent to Alpha. Pursuant to the terms of a written plan, Equitable processed claims and made disbursements through the Administration Agreement by means of a special account funded periodically by Alpha in an amount sufficient to cover current health care costs. Under the Agreement, Alpha was to determine the eligibility of the claimants and to review Equitable's initial determinations respecting payment of benefits.
61. By the end of 1982, all of Alpha's cement plants were closed.

Conclusions of Law
1. This Court has jurisdiction over this matter pursuant to 29 U.S.C. § 1132(f) and 29 U.S.C. § 185(a).
2. If the retirees' life and health insurance are vested benefits, then the benefits may not be terminated without the retirees' consent. See, e.g., Allied Chemical & Alkali Workers v. Pittsburgh Plate Glass Co., 404 U.S. 157, 181 n. 20, 92 S.Ct. 383, 398 n. 20, 30 L.Ed.2d 341 (1971). Unlike pension benefits, health and life insurance benefits do not vest as a matter of law. See Molnar v. Wibbelt, 789 F.2d 244, 250 (3d Cir.1986); compare 29 U.S.C. § 1053 (each pension plan shall provide employee's right to benefit is nonforfeitable upon attainment of normal retirement age) with 29 U.S.C. § 1051(1) (excluding employee welfare benefit plan from such requirement). In practical terms, there is merit to such a distinction. With some degree of accuracy, the need for funds for and the extent of potential claims against a pension plan may be determined. For example, the length of employment and the employee's salary are determinable. This is not true of health and life insurance benefits. The funding needs of a health insurance plan are more difficult to estimate because one insured individual, in comparison to another *1126 insured individual, may have a larger number of claims or a claim for more costly service or no claims at all. In the case of life insurance, there is a certainty the insured will die but an uncertainty as to when the death will occur. Providing this coverage then presents the worst of both worlds.
3. If the life and health insurance benefits are unambiguously limited to the term of the relevant agreement, then the benefits are not vested. See Bower v. Bunker Hill Co., 725 F.2d 1221, 1223 (9th Cir.1984). Benefits may, however, outlast the agreement under which they arose if the parties so intended. John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); District 29 United Mine Workers of America v. Royal Coal Co., 768 F.2d 588 (4th Cir.1985); Food & Commercial Workers Local 150A v. Dubuque Packing Co., 756 F.2d 66, 69-70 (8th Cir.1985).
4. Thus, the issue is one of contract interpretation, Royal Coal Co., supra, 768 F.2d at 590; and, if necessary, a consideration of the relevant extrinsic evidence and the parties' course of dealing, Dubuque Packing Co., supra, 756 F.2d at 69, 70. See International Union, UAW v. Yard Man, Inc., 716 F.2d 1476, 1479-80 (6th Cir.1983), cert. denied, 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).
5. Plaintiffs have the burden "to show that the parties intended retirees' benefits would be vested and not tied to the agreement which created them." Dubuque Packing Co., supra, 756 F.2d at 70.
6. Plaintiffs contend the 1978 Plan, as extended, clearly provides retirees' lifetime benefits. Plaintiffs urge language explicitly continuing prior programs is not language limiting the benefits to the duration of the agreement, but is language assuring that prior benefits would continue. Plaintiffs also urge: (a) the "until death" language of the 1965 Basic Agreement appendix, effective in 1966, was never altered by subsequent Agreements or the parties' conduct; (b) the "term of agreement" provisions in the Agreements demonstrate the parties' intent to improve, not terminate, the Plan, particularly in light of explicit statements in the Plan that certain benefits "terminate" upon retirement; and (c) through letters, the 1978 SPD, and oral representations, Alpha advised retirees they would receive benefits for life. Plaintiffs direct the Court's attention also to Alpha's past continuation of benefits for retirees during strikes by active employees, during hiatus periods, and under former terms of the Plan even when early Plan booklets or CBAs failed explicitly to state that former plan provisions continued.
Alpha defendants counter that the 1973, 1975, and 1978 Plans' explicit reaffirmation of the terms of earlier Plans and the Plans' express "term of agreement" provisions indicate an intent that the benefits were tied to the term of the relevant Plan. Moreover, these defendants urge none of the Plans specify that the benefits were vested or lasted either "for life" or "until death." Alpha defendants interpret the "until death" provision in the Plan effective in 1966 as simply a provision rejecting the union's demand that coverage of the retiree's dependents continue after the retiree's death. Alpha defendants urge that the coordination of benefits provisions, first agreed upon in 1966, actually reduced payments made by Alpha and received by class members, yet no one then urged such benefits could not be reduced because they were vested or otherwise received for life.
7. The language of the Insurance and Health Agreements collectively bargained by Alpha and the union beginning in 1973 reflected the intent of the parties to limit retiree coverage for persons covered by those agreements to the term of the currently effective Agreement:
(a) The Agreements specifically reaffirmed benefits of past retirees and earlier Plans stating that benefits previously provided would "continue" or "be continued" under the current agreement. Moreover, the 1975 and 1978 Agreements each contained an article specifying the prior benefits that continued. Dubuque Packing *1127 Co. is factually distinguishable. Dubuque Packing Co., supra, 756 F.2d at 69-70. In that case, the Eighth Circuit determined that the parties intended benefits to continue beyond the agreement's terms. In particular, the Eighth Circuit found that, unlike prior agreements, the most recent agreement did not contain provisions extending benefits to employees who retired before the agreement's effective date and there was no explanation for the omission. Id. at 69. Here, the clear inclusion of provisions reiterating the continuation of prior benefits and earlier Plan programs persuades the Court that Dubuque Packing Co. does not require a finding for plaintiffs.
(b) The Agreements, rather than providing that retiree benefits are fixed forever, provided for continuation of "insurance coverages under the Prior Programs ... as the same may now or hereafter be amended, modified or supplemented in collective bargaining between the parties." This provision for changes is not consistent with a conclusion that the benefits would continue beyond the Agreement's expiration date. Struble v. New Jersey Brewery Employees Welfare Trust Fund, 732 F.2d 325, 330 (3d Cir.1984).
(c) The Agreements contained a duration clause explicitly limiting their duration. Here, as in International Union (UAW) v. Roblin Industries, 561 F.Supp. 288, 298 (W.D.Mich.1983), a provision limiting the period for which plan benefits would be "continued" is a clear indication that the benefits were provided only for the "effective" term of the agreement. See also Royal Coal Co., supra, 768 F.2d at 592; Struble, supra, 732 F.2d at 330. The inclusion of such language also makes this present case different from the cases upon which plaintiffs rely. See Roblin Industries, supra, 561 F.Supp. at 298-99.
(d) The coordination of benefits provision in the Agreements, which reduced benefits payable by Alpha to those already retired, is inconsistent with an interpretation that retiree welfare benefits were vested. This coordination provision applied to all retirees, not just to those retiring after the effective date of the Memorandum of Understanding. Because separate provisions of the contract must be interpreted in such a way as to render them consistent if at all possible, e.g., Yard Man, Inc., supra, 716 F.2d at 1479-80, the Plan cannot be interpreted to provide vested rights for prior retirees in one provision and to take such rights away in another.
8. Moreover, the parties' conduct in the face of Alpha's plant closings evince the parties' intention that retiree benefits did not continue beyond the expiration date of each Agreement. Alpha sought an agreement in 1981 that would terminate retiree benefits; at least one of the remaining locals voted on that proposed amendment in early 1982; and, after the extended 1978 Plan expired, the remaining local and Alpha agreed that all agreed upon provisions, except retirees' benefits, would be extended.
9. The Court is troubled by terms in the Summary Plan Description, in letters to retirees, and in alleged oral statements to Alpha's employees indicating that insurance benefits would continue for life. Alpha urges that (a) this language is limiting, e.g., it limits benefits granted to retirees' dependents; and (b) that such language indicated Alpha's expectation to provide retirees with benefits for life based on an expectation Alpha would continue producing cement and entering into CBAs providing for retiree benefits. Based on the clarity of the most recent health and insurance agreements in providing language reaffirming earlier Agreement provisions and retirement benefits and in providing restricted duration provisions, and on the parties' conduct in 1981 and 1982, the Court does not give great weight to such phrases under the circumstances presented here.
10. The Court is also not persuaded by plaintiffs' argument that lifetime benefits are granted by the phrase "until death," found in the 1965 CBA Appendix. This is the first and only time the phrase appeared in the parties' twenty-five year history of negotiating for retirement insurance benefits. *1128 The fact that this very clear phrase was not used again implies that the change, if any, provided by it was the subject of bargaining. While the Court concurs with defendant Alpha's position that the "until death" phrase probably signified a direct rejection of the union's submitted proposal to continue dependent benefits after a retiree's death, at the same time it implies that those benefits would continue through the retiree's lifetime, and thus, as plaintiffs contend, beyond the Agreement's terms. Cf. Policy v. Powell Pressed Steel Co., 770 F.2d 609, 614-15, 616 (6th Cir.1985), cert. denied, ___ U.S. ___, 106 S.Ct. 1202, 89 L.Ed.2d 315 (1986). In light of subsequent Agreements' provisions and the parties' later conduct, however, the Court finds this unique phrase is not significant for purposes of construing the more recent Agreements.
11. Plaintiffs' efforts to characterize Alpha defendants' liability in terms of breach of fiduciary duty, see 29 U.S.C. §§ 1104 and 1106, or in terms of nondisclosure of benefits at the end of the contract, see 29 U.S.C. § 1102, are not persuasive and will not now be considered because plaintiffs did not plead these causes of action and they were not tried by consent.
12. Plaintiffs joined Equitable in these proceedings as a "party in interest," defined in § 3(14)(B) of ERISA, 29 U.S.C. § 1002(14)(B), as including persons providing services to the Plan, and as a necessary party under Rule 19 of the Federal Rules of Civil Procedure. However, the fact that one may have been a "party in interest," as that term is used in ERISA, does not alone make one a necessary party in civil actions to enforce rights under the Act. Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan, 481 F.Supp. 454, 458 (N.D.Ga. 1979). Plaintiffs also contend that Equitable is a fiduciary as that term is defined in ERISA, 29 U.S.C. § 1002(21). However, Equitable's payment of health care claims pursuant to the provisions of the Plan from funds provided periodically by Alpha under the Administration Agreement does not clothe Equitable with discretionary authority over management of Plan assets or over the administration of the Plan to such an extent that Equitable's role was that of a fiduciary. Austin v. General American Life Insurance Co., 498 F.Supp. 844, 846 (N.D.Ala.1980) (no claim under ERISA against mere insurer); cf. Chicago Board of Options Exchange v. Connecticut General Life Insurance Co., 713 F.2d 254, 259 (7th Cir.1983) (liability to amend annuity contract may render insurance company a fiduciary); Wolfe v. J.C. Penney Co., Inc., 710 F.2d 388, 394 (7th Cir. 1983). Equitable had no discretion to pay or decline a claim. No one contends, nor is there evidence to suggest, that Equitable had any role, discretionary or otherwise, in Alpha's decision to terminate the Plan.
Accordingly, judgment will be entered in favor of defendants and against plaintiffs. See District 29, UMW v. Royal Coal Co., 768 F.2d 588 (4th Cir.1985); Struble, supra, 732 F.2d at 330-31; Turner v. Local Union No. 302, Int'l Bro. of Teamsters, Chauffers, Warehousemen & Helpers of America, 604 F.2d 1219, 1222-26 (9th Cir. 1979). The parties' motions for directed verdict will be denied.
NOTES
[1] The Court does not now have before it the plaintiff-intervenor United States' claims, the third-party claims filed by defendant Alpha and defendant Plan, or plaintiffs' requests for relief. Such matters have been bifurcated for later, separate consideration, if necessary.
[2] Plaintiffs and defendants stipulated that, for purposes of the liability determination, there are no retirees from Alpha's cement plant at Manheim, West Virginia, and there were none as of May 1, 1982.
[3] Only the memorandum between Local 43 and Alpha expressly stated that "[c]ompany group insurance plans currently covering employees, retired employees and dependents of employees and retired employees and the plans effective May 1, 1966 shall remain unaltered."